SAMUEL SOKOLOSKI v. NEW SOUTH BUILDING AND LOAN ASSO-
CIATION.

1. BUILDING AND LOAN ASSOCIATIONS. *Nonresident company.* *Code* 1892,
   § 2348. *Exemption from usury.* *Comity.*
   Comity does not require that nonresident building and loan asso-
   ciations be allowed the exemptions from the usury laws given
   by statute, code 1892, § 2348, to like associations "domiciled in
   this state."

2. SAME. *Interest.* *Premiums.*
   Ten per centum per annum being the maximum rate of lawful
   interest, the contract of a nonresident building and loan associ-
   ation stipulating for six per centum per annum, as interest, and
   six per centum to be paid per month as fixed premiums upon a
   loan, is usurious.

3. SAME. *Law of domicile.*
   A law of its domicile authorizing a nonresident building and loan
   association to charge a fixed premium, per month, upon a loan,
   is not operative here against our usury laws.

FROM the chancery court of Copiah county.
HON. H. C. CONN, Chancellor.
Sokoloski, appellant, was complainant in the court below;
the building and loan association was defendant there. The
facts are sufficiently stated in the opinion of the court.

*R. N. Miller,* for appellant.
The contract between Sokoloski and the building and loan
association is a Mississippi contract; it was made in this state,
payable in fact here, notwithstanding the recitals in the notes,
and was secured by mortgage on lands here. 1 Randolph on
Commercial Paper, 125; *Brown* v. *Freeland,* 34 Miss., 181;
*Bank* v. *Auze,* 74 Miss., 609.

The contract stipulated for unlawful interest, and is usurious. Sokoloski was to pay six per centum per annum as interest, six per centum per month, called premiums, besides stock dues. It must be noted that what is called "premiums" is in every case fixed by the by-laws of the association and not by open bidding. In this the case differs materially from *Sullivan's case,* 70 Miss., 94.

We contend, first, that in every case where a building and loan association, if this be one, charges "fixed premiums"—that is, premiums which are not fixed by open bidding among members—such premiums become interest, and if added to what is called interest in the contract, it exceeds the legal rate, then the whole contract is usurious, unless such taking of "fixed premiums" has been previously authorized by legislative act.

And, in the second place, that our code, which exempts building and loan associations, domiciled in this state, from the operation of our statute against usury, is, at least, a legislative declaration that these contracts are to be treated in this state as pure loans, and that those not domiciled in this state, who charge "fixed premiums" or any other kind of premiums, in excess of the legal rate, are to be held as violating our statutes against usury. Otherwise, what is the necessity of the exemption at all; what is its meaning?

In the third place, our contention is that appellee is not a building and loan association at all, except in name, and that it is nothing more or less than an organized band of capitalists masquerading as a building and loan association, lending money at usurious interest, and that what it calls its premiums is a part of the charge for the use of the money, and, just like the contract of a banking company, forms part of the interest, by whatever name called, and if the aggregate exceeds the legal rate, it must be condemned as usurious.

On the subject of comity it is only necessary to quote from the opinion of this court in the case of *Williams* v. *Cresswell,* 51 Miss., 817, where this court says: "Foreign corporations

may, by comity of nations, make contracts in a foreign state, unless against the public policy or interest of this state; but if the contract, though valid in a foreign state, is opposed to the public policy or interest of this state, it will not be enforced on the doctrine of comity."

The following authorities maintain every position for which we contend: Endlich on B. & L. Associations, sec. 16; *Ib.,* sec. 367; *Ib.,* 399; *Ib.,* sec. 407; *Ib.,* sec. 409; *Ib.,* sec. 410; *Ib.,* sec. 411; Thompson on B. & L. Associations, 60; *Ib.,* 75; *Mechanics, etc.,* v. *Wilcox,* 24 Conn., 147; *Fall* v. *U. S. B. & L. Ass'n.,* 34 Am. St. Rep., 194; *Pryse* v. *Peoples B. & L. Ass'n.,* 41 S. W., 574; *McCauley* v. *B. & L. Ass'n.,* 56 Am. St. Rep., 813; *Robertson* v. *A. H. Ass'n.,* 69 Am. Dec., 150; *Meroney* v. *Atlanta B. & L. Ass'n.,* 116 N. C., 882, s.c. 47 Am. St. Rep., 841.

It will not do to answer the charge of usury by saying that Sokoloski was a man *sui juris,* and that he entered into the contract with his eyes open. This may be said in any case where usury is set up. This has been the cold-hearted answer of Shylock in all the tide of time.

But the answer of the law to the demand for the enforcement of the contract as written, is in the warning of Lord Coke: "To them that lend money my caveat is that, neither directly or indirectly, by art or cunning invention, they take above ten in the hundred; for they that seek by sleight to creepe out of these statutes will deceive themselves, and repent in the end."

*J. S. Sexton* and *Johnston Armstrong,* and *Mixon & Lotterhos,* for appellee.

In the first place let us determine whether the court below was correct in deciding that this was a Louisiana contract. It will be remembered that the allegation of the bill, to the effect that the place of payment was understood to be in Mississippi, but was fraudulently inserted as Louisiana, in the notes executed by complainants, was specifically denied by the defendant

under oath, thus leaving the burden of proof as to that issue upon complainant.

It will be seen that if the testimony taken on the subject had not been suppressed, as it was upon motion, and as it should have been under the plain elementary rule announced in *Herndon* v. *Henderson*, 41 Miss., 584, that "parol evidence of the oral altercations, propositions, and offers and conversations between the parties pending the negotiation of a contract is inadmissible where the contract is reduced to writing. · They are merged in the writing, which becomes the sole exponent of the terms of the contract." It is wholly insufficient, if believed just as stated, to sustain the allegation in reference to the fraudulent insertion of the place of payment.

In the case of *Brown* v. *Freeman,* 34 Miss., 181, the court announces the rule applicable to this contract in the following words: "When a contract is made in one country to be performed in another, the law presumes, in the absence of any other circumstances, that the parties contracted with reference to the place where it is to be performed, and in that case, the contract as to its nature, construction and validity will be governed by the *lex loci solutionis.*"

"When a contract made in one country to be performed in another stipulates for the payment of a rate of interest allowable by the *lex loci contractus,* but prohibited by the *lex loci solutionis,* it will be governed by the law of the place where it was entered into. For as it was competent for the parties to contract with reference to the law of either place, it will be presumed that they contracted with reference to that law which their contract did not violate. A presumption will never be indulged that a contract is in violation of law when it is capable of any other reasonable construction."

In the case of *Commercial Bank* v. *Auze,* 74 Miss., 622, s.c. 21 So. Rep., 755, the court says "the syllabus to the case (quoted above) presents with wonderful perspicuity, the views of the court," and the Auze case was decided in accordance with

the principles announced in the former case of *Brown* v. *Freeman*.

Here we have a contract entered into between a citizen of Mississippi and a corporation of Louisiana, and if nothing had been said about the payment of moneys due to the corporation, the presumption would be that it was payable in Louisiana, where the corporation had its office and place of business. Not only so, but if it be conceded, as it is not, that this contract violated the usury laws of Mississippi, as it is clearly no violation of the laws of Louisiana, it would follow under the rule above announced as a presumption that the contract was solvable in Louisiana. Thus we have the double presumption in favor of the validity of the contract called in question in this case, but fortunately we are not left to presumptions, as both contracts entered into between the complainant and defendants herein, expressly provided where this contract should be fulfilled. On this subject the case of *Bennett* v. *Eastern B. & L. Asso.*, 177 Pa. St., 233, is directly in point.

Applying the principle above stated to building and loan association contracts, which, of course, should be construed just as any other contract, in the case of *Nickels* v. *People's Building, Loan and Savings Association,* the supreme court of Virginia held that "a bond executed in Virginia, and payable in New York, is governed by the law of New York and not of Virginia, as regards the question of usury" (25 S. E. Rep., p. 8). The same court held in the case of the *National Mutual Building and Loan Association et al.* v. *Ashworth,* that "where a building association lends money in Virginia to a citizen of that state located there, but the bond is made payable in New York, the contract is a New York contract, and its legality is to be determined by the laws of that state" (22 S. E. Rep., 521). In the case of the *Equitable Building and Loan Association* v. *Vance,* decided by the supreme court of South Carolina, at the November term, 1896, Bennett, Justice, states the case as follows: "The leading questions

raised by the pleadings and exceptions are: (1) Was the contract to be performed in Georgia or in this state? (2) Was the contract usurious? The circuit judge reached the conclusion that the parties to the contract intended that it should be performed in Georgia. In this, after carefully considering the testimony, we can find no error. After thus concluding, it followed as a matter of course that the defense of usury would fail because it is laid down in the law of Georgia that 'no fines, interest, or premiums paid on loans in any building and loan association shall be deemed usurious.' "

In the case of *Turner* v. *Interstate Building and Loan Association,* 27 S. E. Rep., 947, the above case was followed, the supreme court in the latter case affirming the principle laid down in the former and holding that the contract with a Georgia building and loan association must be construed according to the laws of Georgia, because made payable in Georgia.

To the same effect is the case of the *Pioneer Savings and Loan Company* v. *Cannon,* 96 Tenn., 599, where it was held that a note executed by a citizen of Memphis, Tenn., payable at Minneapolis, Minn., was a Minnesota contract.

But even if we treat the contract as a Mississippi contract it is not usurious. No question has given rise to greater contrariety of opinion than the proper interpretation of building and loan contracts, and Endlich truly says, "The various elements thus entering into the transaction have been laid hold of by the courts to sustain or invalidate it accordingly as their more or less accurate understanding of the purposes and results of the building association scheme enabled them to take a comprehensive rather than a one-sided view of it, and induced them to look with favor or disfavor upon it." Endlich devotes some twenty-two pages, commencing on page 303 and ending on page 325 to a review of the various interpretations which the courts of England and of the states of this Union have placed upon "the nature of loans or advancements in building associations."

In this review he classes the English courts and the courts of Maryland, Kansas, North Dakota, Massachusetts, New Jersey, Louisiana, Arkansas, Alabama, Illinois, Virginia, District of Columbia, Michigan, New Hampshire, New York, and Georgia in one group, and shows that these courts uphold building and loan contracts, and enforce them as partnership dealings, and adds with reference to the decisions of our own court, "a similar view seems indicated in Mississippi, where it is said that the premium is a bonus which the members may lawfully agree to pay for a present advancement in cash of a sum certain 'for the virtual transfer to the association of his shares of stock, which, in the final winding up of its affairs, may realize the sums actually received by the member, together with the premium bid, or which may not,' " referring to the cases of *Sullivan* v. *Jackson Building and Loan Association,* and the *Natchez Building and Loan Association* v. *Shields,* decided by the supreme court of this state as indicating the drift of our court on this question.

In the case of *Goodman* v. *Loan Association,* 71 Miss., Campbell, C. J., delivering the opinion of the court, in speaking of building and loan associations, and the interpretation of their contracts with their members, used the following language: "The principle of such associations as known to us is compounding monthly receipts, whereby to produce astounding results for the mutual benefit of all concerned, and . . we see nothing wrong in members of full age and *compos mentis* mutually binding themselves to so beautiful a scheme for reciprocal advantage, and being held to the performance of what they have agreed." In the case of *Carson* v. *Vicksburg Bank,* 22 So. Rep., 2, Terrall, J., delivering the opinion of the court, used the following language: "It was taken for granted, in *Moore* v. *Bennett,* that the constitution and by-laws of an association constitute the contract between the society and its members." In *Jacobs* v. *Insurance Company,* 71 Miss., 658, this court took high ground on enforcing the contract be-

tween the parties, and refused either to examine or cite authorities justifying the enforcement of the contract as written, "preferring to rest with perfect confidence on the unmistakable meaning of the written agreement." So it should be here.

It is urged that the view taken here, viz.: that if the contract in question be solvable in Mississippi, still it is not usurious, is in conflict with the last clause of § 2348 of the annotated code, which provides that "this section shall not apply to a building and loan association domiciled in this state dealing only with its members." A little consideration, however, will show the fallacy of this argument. This statute deals with the legal rate of interest in the State of Mississippi, and creates a forfeiture in case a greater rate be charged. The exception above quoted does not profess to deal with foreign associations, but they are left exactly upon the same plane as if the exception had not been ingrafted upon the statute.

It was seriously insisted that the contract in question is usurious because the premium charged was not fixed by open bidding, but was fixed by a by-law of the association. This contention is based upon the statement made by Endlich on Building Associations, in sec. 409 of the second edition. By an examination of that section, it will be seen that the author's statement in this respect is predicated upon the case of *Bates* v. *People's, etc., Association,* 42 Ohio State, 655, from which he quotes at length. Of course his statement, based as it is upon the case referred to, must stand or fall as the case itself shall be found to uphold or condemn his conclusion derived therefrom. When we come to examine the case itself, we find that it turned upon the construction of "sec. 2 of the act of May 5, 1868, as amended May 9, 1868," of the acts of the legislature of the state of Ohio. This decision turned upon a statute which required competitive bidding, and it does not support, or even tend to support, the statement made by Endlich in sec. 409. Curiously enough in sec. 364 of Endlich on Building and Loan Associations, he quotes exactly

the same case in support of the position that in Ohio the statute is the exact measure of the legitimacy and binding extent of the contract.   Only under the statute can it be enforced, and only so far as it is in accordance with the statute.   It thus appears that in sec. 364 he quotes the case of *Bates* v. *People, etc., Association,* to show that in Ohio the question we are now considering is governed by statute, whereas, in sec. 409 he overlooks the fact that that decision turned upon a statute peculiar to that state.

Argued orally by *R. N. Miller,* for appellant, and by *J. S. Sexton,* for appellee.

TERRAL, J., delivered the opinion of the court.

The appellee company was organized under the revised statutes of 1870 of the state of Louisiana, in which there is no reference to building associations.   The statute authorizes any six persons to subscribe themselves into a corporation, with the ordinary powers of a corporation, and with power "to make by-laws for the proper management and regulation of the affairs of the corporation as may be necessary."   In pursuance of such statutory authority, the subscribers, Jules A. Blanc and nine others, on the 10th of May, 1890, formed themselves into a corporation under the name of the New South Building and Loan Association, with power, among other things, to hold, receive, lease, purchase, improve, sell, convey, mortgage, and pledge property, real and personal, to borrow money, lend money on security, and to make and alter its by-laws at pleasure. . Said subscribers constituted said corporation "to carry on business, and to establish branches in any parish of Louisiana, or in any county of the United States."   They provided that the series stock fund of said corporation shall be used for the purchase and sale of real estate, for the building, renting, and selling of homesteads and other real estate, and for effecting loans upon mortgage security within the United States of America.   They fixed the capital stock of said corporation at

fifty million dollars, of which one thousand shares, at one hundred dollars per share, shall be guaranty stock, to be issued only for money, property, or services rendered. The by-laws of the corporation provided, among other things, that a series stockholder could borrow money at the rate of one hundred dollars for every share of stock of the par value of one hundred dollars held by him, and should pay as a membership fee one dollar for each share of stock taken, ten dollars for expense on receiving his loan, and should pay monthly stock dues of seventy cents per month for each share of stock held by him, and six per centum per annum interest on the amount received as a loan, both payable monthly. For the trial of the case it was agreed, among other things, that the company had borrowed the sum of one hundred and thirty-seven thousand and five hundred dollars, for which it gave its bonds, and that one hundred thousand dollars of said sum bore interest at the rate of seven per centum per annum, and thirty-seven thousand five hundred dollars bore interest at the rate of six per centum per annum. Sokoloski joined this association, and borrowed of it eight hundred dollars, to secure which sum he gave a mort-. gage on his homestead. He has paid the association nine hundred and twenty dollars and seventy-nine cents, and this bill is to cancel said mortgage and for a decree against the association for the sum of money paid to the corporation above what, he alleges, it is entitled to retain in satisfaction of said mortgage.

The contract of Sokoloski with the New South Building & Loan Association provides for premiums, not for one gross sum in consequence of open bidding for the advancement, but for a fixed montly premium of six per centum, to be paid each successive month until the loan shall be liquidated, and which fixed premiums, at the rate which the association's answer shows the loan is being liquidated, must, in the aggregate, at the maturity of the stock, exceed fifty per centum of the loan. We find it hard to perceive how the taking of six per centum per

annum interest and six per centum premium monthly through the whole period the loan is to run, can be anything less than twelve per centum interest for the first stated period of forbearance, and a progressively increasing rate of interest for each subsequent period, until the liquidation of the loan. It is said by End. on Bldg. Ass'ns, sec. 394, that the taking of fixed premiums, unless authorized by distinct legislative authority, where the premium and interest together exceed the legal rate of interest, is usurious. If the New South Building & Loan Association be authorized by the legislature of the state of Louisiana to take fixed premiums, yet such legislation could not have any operation in the state of Mississippi, and the taking of a fixed premium of six per centum, with interest at the rate of six per centum per annum added, is usurious. A domestic building and loan association is authorized by our law to exceed the legal rate of interest, but such is not allowed to a foreign building and loan association, and comity would not authorize an association of the last named kind to make contracts here, which, under our jurisprudence, are held to be usurious. The contract for the taking of six per centum premium and six per centum interest is opposed to our public policy, and is usurious and void. *McCauly* v. *Association* (Tenn.), **37** S. W. Rep., 212; *Bank of Newport* v. *Cook* (Ark.), 46 Am. St. Rep., 200–202, note, s.c. 30 S. W. Rep., **35**; *Association* v. *Wilcox,* 24 Conn., 147.

*The decree of the chancery court is reversed, and the case is remanded, to be proceeded in according to the principles herein announced.*