CHARLES R. SHANNON *v.* GEORGIA STATE BUILDING AND LOAN ASSOCIATION.

1. USURY.    *Contracts.    Place of performance.    Intent of parties.*

When, according to the real intention of the parties. as disclosed by the several features of a contract, payment was to be made in this state, the usury laws of this state are applicable thereto, although the contract contains a provision for payment in another state, having dissimilar laws.

2. SAME.    *Building and loan association.    Case.*

Although by their terms notes in favor of a foreign building and loan association are made payable in the state of its domicile, the contract will be subject to the usury laws of this state when the notes are made in this state and secured by a mortgage on land of the maker in this state, and the maker, a resident of this state, has, through a series of years, made all payments of dues and interest in this state to an officer of the local board established and operated in this state by the association under its charter powers.

3. SAME. *Fixed premium.*

The contract of a foreign building and loan association for six per centum per annum, as interest, and six per centum per annum, as a fixed premium, payable in monthly installments, is usurious. *Sokoloski* v. *Association,* 77 Miss., 155, cited.

FROM the circuit court of Jones county.

HON. JOHN R. ENOCHS, Judge.

This was an action by the appellant, Charles R. Shannon, for the recovery of usurious interest paid to the appellee, the Georgia State Building & Loan Association, and was begun by attachment against the defendant as a nonresident. On September 30, 1895, appellant's mother, Mrs. Nancy L. Shannon, contracted with the appellee, a Georgia corporation, through its local agency at Ellisville in this state, for a loan of $1,000, and, to secure payment of the same, executed a deed of trust on her real estate in Jones county, in this state. It was stipulated in the contract that the by-laws of the appellee should be a part of the contract. Article 7 of these by-laws provided for the payment of interest at the rate of six per centum per annum and a fixed premium of six per centum per annum on the amount of the loan, payable in monthly installments. The notes were made payable in Savannah, Georgia, but article 11 of the by-laws provided that payment could be made to the appellee's local agent. At the time of the loan there were issued to Mrs. Shannon ten shares of stock in the association of $100 each, which were immediately assigned to the appellee as security for the loan. Upon the death of her husband, in October, 1896, Mrs. Shannon became unable to continue the payments called for by her contract, and the appellant, her son, advanced the same for her. In March, 1897, with the approval of the appellee, she sold and conveyed to the appellant the property embraced in her deed of trust, subject to lien thereof. The right of the appellant to be substituted in the place of his mother was recognized by the appellee, but the account on its books was continued in the name of his

mother.   The attachment was sustained, but the trial on the merits resulting in a judgment for defendant, and the plaintiff appealed to the supreme court.

*Shannon & Street,* for the appellant.

1. Is the charging and collecting of six per centum interest per annum and also six per centum premium per annum on a loan made by a foreign building and loan association usurious or not under the annotated code of Mississippi, 1892 ?

2. Can money paid on a usurious contract be recovered back by a suit at law ?

3. Can appellant, a substituted debtor, recover back by a suit at law money paid on a usurious contract ?

As to the first contention, there is no dispute as to the fact that the appellee did charge and collect on the loan to Mrs. Shannon six per centum interest per annum, together with six per centum premium per annum; but appellee, in attempting to avoid the penalty of our statute, seek refuge behind the Georgia laws, which they state '' authorizes them to charge any rate of interest that they might see fit.''    We submit that their position is untenable, as this very point was disposed of adversely to appellee in the recent case of *Sokoloski* v. *New South Building & Loan Association,* 77 Miss., 155, s. c. 26 So. Rep., 361.    Our court has expressly decided that ''premium '' is but another name for interest, hence it is clear that appellee has charged and collected twelve per centum per annum interest on a loan made in this state; that having violated the laws of this state by contracting for an illegal and usurious rate of interest, and not being included among the exceptions of § 2348 of the code of 1892, appellee must suffer the penalty.

In support of our second contention, that money paid on a usurious contract can be recovered back by a suit at law, we cite the case of *Bond* v. *Jones,* 8 Smed. & M., 368, which we think received the approval of this court in the later case of *Chaffe* v. *Wilson,* 59 Miss., 42.

As to the third and last contention, the lower court decided this adversely to appellant, holding that appellant, a substituted debtor, could not take advantage of the usurious contract, he not being a party to it. We will admit that there are a number of most excellent authorities among the text-books and decisions of other courts that hold that "none but parties and privies to a contract can avail themselves of a plea of usury in the contract," yet we have been unable to find a decision of this court holding that to be the law, but those that we did find, we think, hold to the contrary. In *McAllister* v. *Jerman*, 32 Miss., 142, and *Chaffe* v. *Wilson*, 59 Miss., 42, the doctrine is established that the owner of an equity of redemption can avail himself of the defense of usury as against a prior mortgagee. The vendee succeeds to all the relations of his vendor in this respect to the property. We would also call the court's attention to the case of *Boyd* v. *Warmack*, 62 Miss., 536, in which this court goes so far as to hold that one who has a subsequent mortgage or deed of trust may plead usury as a defense against the prior mortgagee; with so much more reason, then, can appellant, a purchaser of the equity of redemption by an absolute conveyance, plead usury.

*Frank Johnston* and *Stirling & Harris*, on the same side.

The only possible ground upon which it can be contended that the contract is governed by the laws of Georgia is that the, mortgage note is payable at Savannah, Georgia, on its face. But this cannot, in view of all the facts and circumstances, make it a Georgia contract, and as such to be governed by the laws of that state. Primarily a contract is governed by the laws of the state where it is made; but, where it is to be performed in another state, it may be governed by the laws of the place of performance. This is merely a matter of presumption, arising out of the supposed intentions of the parties in respect to what law was contemplated by them in making the contract. There is nothing conclusive about

these presumptions, and they must yield to the .facts and circumstances of a particular case which indicates the real purpose and intent of the parties.    *Brown* v. *Freeland*, 34 Miss., 181; *Bank* v. *Auze*, 74 Miss., 609.

It is a well settled doctrine of law that fictitious stipulations cannot be placed in a contract in order to evade the laws of the state where the contract is made, and this doctrine applies with particular force to cases where usurious interest is charged.

The doctrine is settled by the recent decisions of this court that the contracts of a foreign building and loan association doing a local business in this state through local. agents, and making contracts in this state, are governed by the usury laws of this state.

In the case of *Sokoloski* v. *New South B. & L. Association*, 77 Miss., 155, the mortgage notes were payable in Louisiana, the contract having been made in Mississippi.    Notwithstanding that the notes were payable in Louisiana, the court held (Mr. Justice Terral delivering the opinion of the court) that the contract was usurious under the laws of this state, and that the exception from the usury laws given to domestic building and loan associations by the Mississippi statute would not be extended to the usurious contracts of foreign building and loan associations doing business in this state upon any principle of comity.    *Sokoloski* v. *New South B. & L. Association*, 77 Miss., 155; *Crofton* v. *B. & L. Association*, *Ib.*, 166.

It is not the case of a foreign association making an occasional loan in this state through its principal office.    But it is, in every sense, a business localized in this state, and managed, operated and conducted through local boards, or agents.    This being the case, it is simply impossible that these foreign corporations can escape the operation of the local law by any contract stipulations whatever.

The contract stipulations are regarded by the courts as mere devices to avoid the usury laws of the state, for it is apparent, from all the circumstances attending these transactions, that the

real purpose is to carry out the contract where it is made ; and the stipulations making the notes payable in another state, is a mere device and fraud. This question was thus decided in the case of *Building and Loan Ass'n* v. *Griffin*, 90 Tex., 480, a case precisely in point, and one that was thoroughly and fully considered by the court. This decision was followed and affirmed in the case of *Perkins* v. *Garner*, 20 Tex. Civ. App., 519. See, also, *Meroney* v. *Atlanta B. & L. Ass'n*, 116 N. C., 882.

The legislature has undertaken, by express enactment, and within the limits of its power, to prescribe the terms upon which foreign building and loan associations may come into this state. The whole contemplation and purpose of the statute is to exempt domestic building and loan associations from the usury laws in dealing with their own members, and to deny this immunity to foreign building and loan associations doing business in this state. The legislature could, if it chose to do so, exclude these foreign associations from the state entirely. And, within the limits of this power, the legislature may prescribe the conditions upon which they may come into this state and do business here. It is provided, that they are not permitted to make usurious contracts. It is, therefore, impossible for them to embark their business in this state through local agents, and then abrogate the laws of this state by stipulations in their contracts.

Ordinarily the laws of· the place where the contract is to be performed governs the contract, if such is the *bona fide* purpose and intention of the parties. And this rule would apply to a building and loan association making a contract at its own domicile with a citizen of Mississippi, and not engaged in a local business in this state through local agents.

This doctrine was held by the supreme court of Tennessee in the case of *Neal* v. *B. & L. Association*, 100 Tenn., 607, where the association was domiciled in Louisiana, the contract having been made direct with the home office. The association had no

local agents or boards in Tennessee. The court distinguished this from the case of an association embarking its business in the state through local agents and thus conducting a local business in the state.

On the other hand, the correct doctrine is, that, where a money-lending foreign corporation establishes and carries on a local business in a state through local agents, its contracts are governed by the usury laws of the state, and those laws cannot be evaded or abrogated by any contract stipulation whatever. *B. & L. Association* v. *Griffin*, 90 Texas, 480; *Perkins* v. *Garner*, 20 Texas Civ. App., 516; *Martin* v. *Johnson*, 8 L. R. A., 170, s. c. 84 Ga., 481. See the following analogous cases: *Fletcher* v. *N. Y. Life Ins. Co.*, 13 Fed. Rep., 526, s. c. 117 U. S., 517; *Wall* v. *Eq. Life Co.*, 32 Fed. Rep., 526; *Mutual Life Ins. Co.*, 40 Mo., App., 281; *Western Assurance Co.* v. *Mary B. Phelps*, 77 Miss., 625.

We think it useless to cite other authorities in this case than the Sokoloski and Crofton cases, 77 Miss., 155 and 166; *Martin* v. *Johnson*, 8 L. R. A., 170, and the case of *McCauley* v. *B. & L. Association*, 97 Tenn., 421, which holds that the mere possibility that the loan will work out at less interest than a usurious rate, if the stockholder retains his membership, will not save the contract from the effect of the usury laws, and that charging a premium not arrived at by open and competitive bidding—in other words, a " fixed premium "—is always usurious, if, taken together, the premium and interest amount to more than the legal rate. *McCauley* v. *Association*, 97 Tenn., 421.

*Williamson, Wells & Croom* and *Hardy & Howell*, for the appellee.

If the contract between Mrs. Nancy L. Shannon and the Georgia State Building & Loan Association be conceded usurious, usury is a personal plea, and appellant being in no sense privy to the contract cannot avail himself of it, especially to

the extent of suing to recover interest paid on the loan by the party privy to it. The contract had been executed by the parties to it, and the loan, principal and interest, had been voluntarily paid by Mrs. Shannon to the association. She alone could sue to recover it. 5 Ala., 565; 100 Ala., 465; 24 N. J. Eq., 120.

It appears that Mrs. Shannon transferred her five shares to appellant after a settlement with appellee, and the appellant, in August, 1899, withdrew the five shares, which he had a right to do under the by-laws, and received from the association $172, the value thereof. In this $172 was included the earnings of these shares of stock, composed of fines, forfeitures, premiums, and interest paid by Mrs. Shannon and other members, and included usury, if these contracts are usurious. This settlement was made voluntarily by appellant and Mrs. Shannon, with full knowledge and notice, without any concealment or mistake of fact. Under the decisions in *Association* v. *Shields*, 71 Miss., 630, and *Loenard* v. *Association*, 74 Miss., 810, appellant and Mrs. Shannon are estopped from claiming or suing for usury. He received a dividend on his stock, which included interest and premium charged to him and his fellow-members. Having received usury from the other members in the settlement, he is estopped to claim a refund of money paid by him, if any be paid. Besides, this loan was repaid before its maturity, at the special instance and request of appellant, after a full statement of the amount and value of the shares, and in the settlement a benefit was allowed him, and we insist that accord and satisfaction is a complete defense to appellant's contention in this case. *Looby* v. *West Troy*, 24 Hun (N. Y.), 78; Pomeroy's Code Remedies (3d ed.), sec. 665; *Besdell* v. *Bissell*, 6 Colo., 162.

This contract is not usurious under the laws of Georgia, where the association is domiciled and transacts all of its business and makes all its contracts. *Reynolds* v. *Ga. State B. & L. Ass'n*, 102 Ga., 126 ; Acts of Georgia legislature 1890–91,

p. 176, sec. 5–8 ; *H.* v. *Atlanta B. & L. A.*, 96 Ga., 206 ; *G.* v. *Atlanta B. & L. A.*, 96 Ga., 803 ; Code of State of Georgia, vol. 2, 1895, § 2401, p. 218.

As the proof shows, the Georgia State Building and Loan Association is not a mere money lending corporation, under the disguise of a building and loan association, organized in Georgia, for the purpose of doing business in Mississippi and other states, and chartered in Georgia, and to evade the interest laws of this and other states, but is a regular building and loan association, collecting money only from its members, and lending only to its members, for the mutual benefit of all. It does strictly a building and loan business and was organized in good faith, for Georgia business, principally, and having prospered, it enlarged by receiving members from other states. It is set forth explicitly in the by-laws, the certificate of stock and in all the contracts, that all payments are to be made at the home office at Savannah, Ga.; all payments to stockholders are from that place ; applications for stock and for loans, are made to the office, and it is distinctly specified in the applications, that no payments made to local secretaries shall be credited until received at the home office, and any payments so made, shall be considered made to the agent of the stockholders and not to the agent of the association. Such is the contract in this case, and we insist that it is a Georgia contract, governed by the laws of Georgia, and not usurious there nor here. The application is made to the association at Savannah, Ga., with the intention of getting the money from there, and the money is to be repaid there, and the contract is to be performed there.

On the proposition that this is a Georgia contract, see the following authorities: *Emanuel* v. *White*, 34 Miss., 56; *Miller* v. *Mayfield*; 37 *Ib.*, 688; *Fulleros* v. *Harris*, 12 Smed. & M., 462; *M. A. & Co.* v. *M. P. & Co.*, 1 Smed. & M., 176; *Henry* v. *Halsey*, 5 Smed. & M., 573; *Brown* v. *Nevill*, 27 Miss., 801; *Brown* v. *Freeland*, 34 *Ib.*, 181; 46 Miss., 618; 51 *Ib.*,

378; 47 *Ib.*, 119; 59 *Ib.*, 152; 57 *Ib.*, 308; 69 *Ib.*, 770. That the contract is not illegal and usurious under the Georgia law, see authorities first in this paragraph.

The Mississippi authorities cited in the brief for appellant which hold that the purchaser of the equity of redemption may plead usury and have it applied in a court of equity as payment on the debt, do not apply to the facts in this case.

Argued orally by *J. B. Sterling* and *Frank Johnston*, for appellant.

Whitfield, C. J., delivered the opinion of the court.

It is thoroughly settled in this state, under facts like those in this record, that the appellant can recover the whole of the interest. *McAllister* v. *Jerman*, 32 Miss., 142; *Chaffe* v. *Wilson*, 59 Miss., 42. The appellant stood as a substituted debtor and had all the rights the original debtor had. The premium in this case was fixed, and the contract was, therefore, usurious. See the cases of Sokoloski and Crofton, 77 Miss., 155–166.

The chief point of contention is whether this is a Georgia or a Mississippi contract.. It is true the notes were payable in Georgia, but the mortgage was on land in Mississippi and the debtor lived in Mississippi, where alone the mortgage could have been enforced. All the payments, through a series of years, were actually made in Mississippi, instead of Georgia, to the local treasurer here, and it is manifest it was intended they should be made here. This foreign corporation had the power to organize local boards throughout Georgia and other states. It did organize a local board, thoroughly officered, at Ellisville, in this state, and to the local secretary and treasurer of this board all payments were made by the appellant and his vendor, and by other members of this association, through a series of years.

It is obvious that this foreign corporation has thus localized

its Mississippi business within the State of Mississippi. It is
not a case of a nonresident money-lender, or a foreign corpo-
ration, in a few isolated cases, dealing with our citizens and
taking notes payable in the state of the domicile of such person
or corporation. It is the case of a localization within this state
of a large business done by a foreign corporation on the faith
of mortgages on land in this state, the payments to be made to
the secretary and treasurer of their respective local boards scat-
tered throughout the state. Wherever, under circumstances
such as these, the foreign corporation, thus localizing its busi-
ness within this state, has the payments made to the secretary
or treasurer of a local board, the real intention of the parties
is that the payments shall be made in this state, and the only
purpose of reciting the contrary in the notes is to evade the
usury laws of this state. The contract is a Mississippi contract
according to the real facts and the real intention of the parties.
Courts look through all disguises to the real case made by the
actual facts. This proposition is abundantly supported by the
authorities. In the precisely parallel case of *Building & Loan
Association* v. *Griffin*, 90 Texas, at page 488, the court says:
"It, therefore, became domiciled in the state the same as an
individual would, who came here for the purpose of doing a
like business and yet retained his citizenship in the state from
which he came. The borrower lived in Texas; all of the prop-
erty that he owned, so far as we know, was situated in this state;
at least there is nothing to indicate that he owned property in
the territory of Dakota. To secure the payment of the debt a
deed of trust was taken upon property situated in this state.
Upon these facts the question is to be determined whether or
not the contract, under the evidence and surrounding circum-
stances, was really intended to be performed in the territory of
Dakota or in the state of Texas.

"The general rule of law contended for by the loan com-
pany, that a contract which is to be performed in a state other
than that in which it is made, may reserve interest, according

to the laws of either state, is too well settled to require discussion, or the citation of authority ; but the law looks to the substance of the contract, and will not tolerate any contrivance by which it is intended to evade the laws of a state in which the contract is made, or sought to be enforced. The fact that the contract expresses that the money borrowed is to be paid in the Territory of Dakota, is met by the real substantional provisions for its enforcement, and the circumstances under which the business was transacted, with such overwhelming force, that we are brought to the conclusion that the contract, in so far as it provided, by its terms, for payment of the money in the Territory of Dakota, was simply a device to evade the laws of this state, and that these facts are so manifest from the face of the papers themselves, that it ceases to be a question of fact, but becomes a matter of law, to be determined from the undisputed evidence that is thus furnished. The contract having been made with a view to its enforcement in the State of Texas, and not in the Territory of Dakota, the agreement expressed in it, that it should be paid in the Territory of Dakota, was intended to enable the loan company to do business in Texas, by authority of the laws of this state, and set our laws at defiance with impunity, and it cannot be enforced by the courts of this state. (Tyler on Usury, p. 83 ; *Miller* v. *Tiffany*, 1 Wall., 298 ; *Falls* v. *U. S. S. L. & B. Co.*, 97 Ala., 417 ; *Meroney* v. *Atlanta B. & L. Ass'n*, 47 Am. St. Rep., 841; s. c. 116 N. C., 882 ; *Martin* v. *Johnson*, 84 Ga., 481 ; *Fowler* v. *Bell*, 37 S. W. Rep., 1058 ; s. c. 90 Texas, 150.)''

In *Meroney* v. *Loan Ass'n*, 116 N. C., 882, the court say, at p. 887 : '' It is important that foreign capital invested within our borders shall have, to the very utmost, its just dues, and that it shall find our courts ready now, as they have always been, to protect its interest and enforce all its lawful rights. But it is important also, that the settled policy of the state should be upheld by its courts, and that schemes, which to them seem manifestly adopted merely to evade its usury laws, should not

be allowed to bring about a virtual abrogation of those statutes.

"If a foreign bank or other lender of money may establish local branches or offices in this state, and through its agents solicit and take application for loans on mortgages of land here, to be sent to the home office to be passed upon and allowed there; and if, because of such arrangement, and the insertion of a statement, put in the note or mortgage, that the contract is 'solvable' in the foreign jurisdiction and is made 'with reference to its laws,' the courts of this state are required to enforce such contracts, and decree a foreclosure of the mortgage and a sale of the land, that the foreign usurer may have his usury; then, surely will it have come to pass that it is no longer true that there is no 'cover or device' by which the wholesome restraints put upon the money lenders by our statutes may be escaped.

"Upon this subject there is in *Martin* v. *Johnson*, 84 Ga., 481, a most emphatic declaration from the highest court of the state that is the domicile of the defendant corporation. A loan of money had been made by a citizen of Massachusetts, through an agent in Georgia, to a citizen of the latter state, secured by mortgage on land there, but payable in the former state. It was contended that the rights of the mortgagee were not to be governed by the laws of Georgia in respect to usury because the note was payable in Massachusetts. The court said: 'If this court should hold that a note made in this state, but payable in the state of Massachsetts, for money advanced by the agent of a person who resides in Massachusetts, could be collected notwithstanding it contained sixteen per centum usurious and unlawful interest, then the law of this state as to usury would be inoperative and useless; the money lenders of those states that have no usury laws, but which allow to be collected any rate of interest contracted for, could flood this state with their agents and by the loan of money exact the highest rate of interest, even a hundred per centum.

"It seems, therefore, that the principle for which the defendant corporation contends is denied in the courts of its own domicile—that a foreign money lender, loaning money in Georgia on mortgage on Georgia land, must be content in a foreclosure proceeding to have the amount due determined by Georgia law.

"The reasons that support the rule there are valid here. The rule of comity requires us to allow foreign corporations a standing in our courts to enforce the valid contracts they may have made with our citizens, and all such liens upon property situated within this state as they have lawfully acquired. But that comity does not require that we should allow foreign corporations to enforce contracts here, if such enforcement would be in conflict with our laws, and, being thus in conflict, the enforcement thereof would work against our own citizens and give to the foreigner an advantage which the resident has not. *Walters* v. *Whitlock*, 9 Fla., 86, (s. c. 76 Am. Dec., 607). Much less does it require that we should allow a Georgia corporation to enforce a mortgage loan which is illegal and void by our laws ( *Ward* v. *Sugg*, 113 N. C., 489), while in that state the rule is as stated in *Martin* v. *Johnson*, supra.

" It is well settled, so well settled that authorities need not be cited, that a purely personal contract, made in one place to be executed in another, is to be governed by the laws of the place of performance. This general rule is subject to the qualification that the parties act in good faith, and that the form of the transaction is not adopted to disguise its real character. Tyler on Usury.

" Now, it seems very manifest to us, considering all the facts and circumstances, that this Georgia corporation required the plaintiff, a citizen and resident of this state, to declare, in the obligation given by him to it for the money loaned him, that the contract was solvable in that state and was made with reference to its laws, not because it was contemplated by either of the parties that the money would be paid there, or that the

parties would enforce their respective rights under the contract in the courts of that state, but because this money lender desired to escape the restraints of the laws of this state, and, by this formal declaration inserted in the contract, compel the courts of this state, in a suit for the foreclosure of the mortgage, to adjust the rights of the parties according to the laws of Georgia and the decisions of its courts, and in disregard of the laws of this state and the decisions of this court.''

In *Fletcher* v. *New York Life Ins. Co.*, 13 Fed. Rep., 528, Judge Teat says: ''The defendant company was doing business in Missouri, with the privileges granted to it here, when said insurance was effected. It may be that the formal acceptance of the proposed contract was, by the letter of the contract, to be consummated in New York. The broad proposition, however, remains, no artifice to avoid which can be upheld. The statutes of Missouri, for salutary reasons, permit foreign corporations to do business in the state on prescribed conditions. If, despite such conditions, they can, by the insertion of clauses in their policy, withdraw themselves from the limitations of the Missouri statutes, while obtaining all the advantages of its license, then a foreign corporation can, by special contract, upset the statutes of the state and become exempt from the positive requirements of law. Such a proposition is not to be countenanced. The defendant corporation chose to embark in business within this state, under the terms and conditions named in the statute. It could not by paper contrivances, however specious, withdraw itself from the operation of the laws, by the force of which it could alone do business within the state. To hold otherwise would be subversive of the right of a state to decide on what terms, by comity, a foreign corporation should be admitted to do business, or be recognized therefor, within the state jurisdiction. Each state can decide for itself whether a foreign corporation shall be recognized by it, and on what terms. Primarily a corporation has no existence beyond the territorial limits of the state creating it, and when

it undertakes business beyond, it does so only by comity. The defendant corporation, having been permitted to do business in Missouri, under the statutes of the latter, was bound by all the provisions of those statutes, and could not, by the insertion of any of the many clauses in its forms of application, etc., withdraw itself from the obligatory force of the statute. The contract of insurance, therefore, is a Missouri contract and subject to the local law."

This last utterance is in exact accord with the holding of this court in *Western Assurance Co.* v. *Phelps*, 77 Miss., 625. See, also, *Southern B. & L. Asso.* v. *Atkinson*, 20 Tex. Civ. App., 516, and 100 Tenn., 607. See especially the very recent case in 76 Am. St. Rep.

And it is immaterial whether the foreign corporation is doing business under a license here or has, without such license, localized its business and domesticated itself here as to such business. And the acts of 1890, p. 10, places "each branch office" and "each agency" on the same footing exactly, treating each as a separate and distinct building and loan association, and taxes each as such.

The general doctrine is, of course, well settled that the law of a place where the contract is to be performed, governs the contract; and the presumption that this contract was to be performed according to the laws of Georgia, simply because the notes were payable in Georgia, is, at last, nothing but a mere presumption to that effect, subject to be overcome by proof that, in truth and in fact, they intended the money to be paid in Mississippi. When all there is, in a case like this, to show that the intention was to perform the contract in a foreign state, is a mere specious paper recital in the notes, and over against this, and contrary to this, are all the other facts in the case, and the whole course of dealing between the parties, it would be an abdication of common sense on the part of any court, to find the real intention of the parties in the paper recital, instead of in the real facts of the case.

It must be remembered that the state has the power to prescribe the terms on which foreign corporations may do business.    It is declared in § 849 of the code of 1892, last clause, "such foreign corporations shall not do or commit any act in this state contrary to the laws or policy thereof, and shall not be allowed to recover on any contract made in violation of law or public policy."    This is the plain mandate of our law, which must be rigidly enforced by the courts.    And the code otherwise provides that (§ 2348) domestic building and loan associations are excluded from the operation of the usury laws, but foreign building and loan associations are subject to them, and to enforce this public policy, thus declared by the statute, is not to give extra territorial operation to our statutes.    On the contrary, this corporation has come into the state, localized its business here, through local boards scattered all over the state, and must submit such business thus localized to the operation of the laws of the state.    To hold otherwise, would operate the grossest injustice to our citizens and would virtually abrogate our statutes against usury.

It may be further remarked that we announce, as to this foreign building and loan association the identical doctrine which the state of Georgia, through its supreme court, has announced (*Martin* v. *Johnson*, 84 Ga., 481) in an exactly similar case.

We append, for convenience, a few of the authorities supporting our views, whose reasoning we approve, so far as relates to the question under discussion: *U. S. B. & L. Assn.* v. *Scott*, 34 S. W. Rep., 235, decided in 1896, the court saying: "A foreign building and loan association engaged in doing business in Kentucky will be permitted to charge no higher rate of interest than is chargeable under the laws of this state; and while, by the laws of comity, the charter of such a corporation will be recognized here as the law of its existence, it is the charter alone which is recognized, and not the general legislation of the country of its domicile with reference thereto,

or the construction of its charter provisions by the foreign courts. Moreover, when such a corporation employs the usual agencies to solicit and transact business in this state, and contracts for the payment of premiums and interest in excess of the rate authorized here, the transaction will be denounced as an attempted evasion of our laws, whatever may be the nominal rate specified or artifice adopted; and this, though it be specifically provided that the contract is made with reference to the laws of the foreign state. Such a provision only makes the intent to evade the more manifest.''

*Pryne* v. *People's B. & L. Ass'n,* 41 S. W. Rep., 574, decided in 1897, these two being Kentucky cases, *Nat. L. & Investment Co.* v. *Stone,* 46 S. W. Rep., 67, decided in 1898, a Texas case. It was held therein that it was immaterial whether the association had obtained a permit or license to do business in Texas, if, in fact, it had localized its business there. In such latter case the contract was a Texas contract as well as in the former. *Holman* v. *Hart,* 53 S. W. Rep., 310, a Tennessee case, decided in 1899; 88 Ga., 756, 85 Ind., 414; 4 Am. & Eng. Enc. Law (2d ed.), p. 1072, and note 5.

*Crippen* v. *Leighton,* 76 Am. St. Rep., at pp. 196–7, where the court says: '' In the case of contracts the common law enforces the contract made by the parties, but not the *lex loci,* except in so far as they have made it a part of the contract. The doctrine that contracts are to be interpreted according to the law of the place where they are made or to be performed, is merely a rule for finding the intention of the parties, *Peninsular, etc., Co.* v. *Shand,* 3 Moore, P. C. C., N. S., 272; *Anstruther* v. *Adair,* 2 Mylne & K., 513. ''A different decision would totally defeat the intention of the contracting parties,'' *Di Sora* v. *Phillips,* 10 H. L. Cas., 624, 638, 639. The only purpose of the proof of the foreign law is to determine the meaning of the language used by the parties for the same reason precisely that evidence is heard of the signification of technical terms, *Prentiss* v. *Savage,* 13 Mass., 20, 23;

*Koster* v. *Merritt*, 32 Conn., 246; *Dyke* v. *Erie Ry. Co.*, 45 N. Y., 113, 118, 6 Am. Rep., 43.

The foreign law, as such and *ex proprio vigore*, has no effect. Effect is given to the agreement of the parties only. The court looks into the *lex loci* so far, and only so far, as may be necessary to determine what the contract is, and whether it shall be enforced, if at all, according to the intention of the parties. This is not a matter of courtesy or favor, either to the country where the contract was made or to the parties. It is the right of the parties, it is as if the foreign law were in terms expressed in the contract. The principle " loosely called comity (*Schibsby* v. *Westenholz*, L. R. S. Q. B., 155, 159) is not of courts, but of nations." Story's Conflict of Laws, secs. 37, 38; *Bank of Augusta* v. *Earle*, 13 Pet., 519, 589."

" The question of the enforcement of the laws of a foreign state is not a question of comity to that state, but of the power of the courts of the forum. The organic, or statute, or common law of no state in the union has conferred upon its courts authority to put into active operative effect, efficient *per se*, the statutes of another state. There is a wide difference between putting a foreign statute in active operation and treating a transaction of which the court has jurisdiction as it is modified, affected, or characterized by the law that operated upon it where it took place. To enforce a liability created solely by the statute of a foreign land, is to give that statute precisely the same force and effect as if it were a statute of the forum." *Falls* v. *U. S.*, etc., *L. Co.*, 97 Ala., 417, s. c. Am. St. Rep., 194; *Phœnix Ins. Co.* v. *Commonwealth*, 96 Am. Dec., 331.

In the cases in 46 S. W. and 34 S. W. Rep., supra, there was no local board, as in this and the Sokolosky cases, but the foreign corporation had local offices and local agents, and had thus localized its business, and the same rule above announced was applied—a point not here presented. The principle is much like that of *Jahier* v. *Rascoe,* 62 Miss., 699. Rorer on Interstate Law, p. 48, quoted in 85 Ind., 420, 421. It seems

that in 1898, carrying out the doctrine of these cases, where foreign corporations localized their business in other states, the state of South Carolina actually passed a law providing that "all contracts secured by mortgage of real estate situated within this state shall be subject to and construed by the laws of this state regulating the rate of interest allowed, and in all other respects, without regard to the place named for the performance of the same." 22 S. C. Stat., 747, and the supreme court of that state, in *Tobin* v. *McNab*, 53 S. C., at page 76, pronounced this a " wise law."

. Foreign corporations wishing to do business with our citizens, and localizing that business within our state through local boards, must comply with the laws of this state. They cannot, under such circumstances, enforce here stipulations in contracts allowed by the law of the state which created them if these stipulations violate our laws or our public policy. Such laws of such foreign states can have, *ex proprio vigore*, no extra territorial effect, and it is not competent for a foreign corporation, whose business has been localized in this state, or the borrower, or both, to abrogate, by attempted contract, stipulations whose purpose it is to evade our laws against usury, the laws of this state on that subject.

This holding in no way interferes with the right of a foreign corporation whose business has not been localized here to make contracts with borrowers, to be governed by the laws of the state of their domicile, if there be no purpose therein to evade the usury laws of this state. Such liberty of contracting, exercised in good faith, is not herein interfered with. The authorities cited to that point by counsel for appellee are not pertinent to cases like the one before us. All the cases are admirably collected in a note to *Bank of Newport* v. *Cook*, 46 Am. St. Rep., 171. In that note the learned editor points out, on page 202, the distinction to be observed, saying: "The proper answer to this argument is, that mere shams and evasions are not permitted to counteract and annul the law, and

where it appears that the purpose of the parties in making the obligation payable in another state was to evade the law against usury of the state in which it was executed, it will be regarded as infected with usury.    *Pratt* v. *Adams*, 7 Paige, 615; *Railroad Co.* v. *Bank of Ashland*, 12 Wall, 226; *Andrews* v. *Ponds*, 13 Pet., 65."

Our decision is rested upon the two distinct grounds, first, that where a foreign money-lending corporation has localized its business within this state, through local boards, doing here regularly and continuously for years the business of the corporation, it has thus voluntarily domesticated itself within this state and subjected its business and contracts to the operation of our laws, and, second, that where, in such case, all the facts, fairly weighed, show that the only purpose of a mere stipulation in the notes or mortgages for payment in the foreign state must have been to evade our laws on the subject of usury, no device or disguise or contrivance will prevent the court from stripping off the mask and pronouncing the judgment of the law on the real case made by the actual facts.

The proposition that the local secretary and treasurer is the agent, not of the lending corporation, whose secretary and treasurer he was, but of the borrowing debtor, is utterly unfounded.    *Murphy* v. *Sons and Daughters of Jacob of Am.*, 77 Miss., 830.

The facts of the case make *Natchez B. & L. Asso.* v *Shields*, 71 Miss., 630, and *B. & L. Asso. of Jackson* v. *Leonard*, 74 Miss., 810, wholly inapplicable.

It is noteworthy that no dividends or profits are allowed by the by-laws of this association where the stock is surrendered before maturity.    The appellant, so far from deriving any profits, actually lost $19.50.

*The judgment is reversed and cause remanded.*