## J. B. FOWLER v. MARY E. BELL ET AL.

### Decided November 16, 1896.

1. Foreign Corporation—Comity.

The comity which permits a corporation created by the laws of one state to do business in another does not extend so far as to concede to it in this State the exercise of a power which would be in violation of the laws or public policy of this State if exercised by a domestic corporation. (P. 157.)

2. Same—Insolvency—Preferring Creditors.

A corporation of another state, after having become insolvent and ceasing to do business, cannot execute a mortgage for the benefit of one of its creditors on property in Texas, though such instrument was valid by the law of the state creating the corporation and in which the contract was made. By the law and general policy of this State such property was held by its stockholders in trust for all its creditors and the attempted preference was a violation of that trust. (P. 158.)

3. Same.

The principle which prevents a corporation of this State, under such circumstances, from preferring creditors is based on the rule by which their stockholders hold the property as trustees, and not on the ground that there is a mere want of power to make such preferences in domestic corporations under the laws of this State. (Pp. 158, 159.)

4. Same.

It was error, in a suit by the preferred creditor, to award foreclosure of his mortgage given by such corporation after becoming insolvent and ceasing business. (P. 161.)

5. Same—Mortgagee and Attaching Creditor.

It was error to give judgment in favor of such preferred creditor for the value of a portion of the mortgaged property against one who had converted it under a claim through attachment, levy and sale at suit of a creditor of the corporation after the mortgage was duly registered, though such attachment and sale did not pass title to the property. (P. 161.)

ERROR to Court of Civil Appeals, Third District, in an appeal from Wichita County.

The suit was brought by Mary E. Bell and her husband to recover on a note and to foreclose a mortgage on personal property in Wichita County, Texas, executed by the McLeod Artesian Well Co. and against Kent, who had bought the property at an attachment sale, and by amendment against Fowler, who had bought it of Kent and converted it. Plaintiff had judgment for the amount of the note with foreclosure of the mortgage, and judgment for the value of the property converted against Fowler, who appealed, and on the affirmance of the judgment obtained writ of error. The facts are stated in the opinion.

*Mathis & Mathis* and *Herring & Kelley*, for plaintiff in error.—The court erred in rendering judgment for plaintiff foreclosing said chattel mortgage, for the reason that the evidence shows (and about which there was no controversy) that, at the time said mortgage was given by the McLeod Artesian Well Company, it was an insolvent corporation and had ceased to do business, and such a mortgage was a preference in favor of plaintiff over its other creditors under whom this appellant Fowler holds title to a portion of its property under attachment proceedings. Lyons-Thomas Hdw. Co. v. Perry Stove Mfg. Co., 24. S. W. Rep., 16; 29 Cent. Law Jour., 442.

The chattel mortgage having been given upon property which was at the time situated in the State of Texas, the parties then intending that any foreclosure thereof that might become necessary should be had in the State of Texas, was controlled and governed by the laws of the State of Texas in determining the rights of the parties thereunder. In such cases the lex fori controls. The validity of a chattel mortgage is a question of local law. Hall v. Harris, 11 Texas, 309; 7 Lawson Rights and Rem., secs. 3715, 3716; Burrill on Ass., secs. 305-6; Queen Insurance Co. v. Ice Co., 64 Texas, 582; 2 Morawetz, Priv. Corp., secs. 959, 960, 964-5-7-8, 970; Jones Chat. Mort., secs. 305-6-7 and note 1; Eldridge v. Sperry, 139 U. S., 276; Smith v. McGroarty, 136 U. S., 241; 3 Am. and Eng. Encycl. Law, 576-7-8 and notes.

The laws of the State of Texas control the remedies for the enforcement of said chattel mortgage as between appellant Fowler, a citizen of the State of Texas, claiming title to property acquired under judicial process issued by one of the courts of Texas, on the one hand, and appellee, a citizen of another state, claiming a preference given by an insolvent corporation, which act contravenes the policy of the State of Texas, which forbids preferences by insolvent corporations. The mortgage in question can be enforced as a preferential lien through comity alone, and this is never permitted when in conflict with the policy of the state where the remedy is sought to be enforced. To do so would be to permit a non-resident corporation suing in the State of Texas to enforce the laws of another state in favor of a non-resident plaintiff so as to defeat the rights of a citizen of the State of Texas acquired under and by virtue of the laws of the State of Texas. That this cannot be done is recognized in the opinion in the case of Barnett v. Kinney, 147 U. S., 476, notwithstanding the fact that it was upon the authority of that case that the trial judge in this case rendered judgment in favor of the plaintiff. Story's Conflict of Laws, secs. 280, 525, 326, 327, 7, 20, 23 and 98; Green v. Van Buskirk, 7 Wall., 150.

Whenever a remedy exists, it is administered according to the lex fori, and such judgment is given as the laws of the state where the suit is brought authorize, and not such as the laws of other states authorize. The distinction between the obligation of contracts and the mode of applying the remedies thereto is well established. The former is universally

recognized according to the law of the place where the contract is made; the latter is bounded by territorial limits and is not of efficiency elsewhere. Titus v. Hobart, 5 Mason, 379. The validity of a contract, its interpretation and enforcement are to be determined and governed by the law of the place of performance. 7 Lawson's Rights and Rem., sec. 3716. The general principle in relation to contracts made in one place to be executed in another is well settled. They are to be governed by the law of the place of performance. Andrews v. Pond, 13 Pet., 78. If a contract (mortgage) be made under one government and is to be performed under another, and the parties had in view the laws of such other country in reference to the execution of the contract, the general rule is that the contract, in respect to its construction and force, is to be governed by the laws of the country or state in which it is to be executed, and the foreign law is in such cases adopted and effect given to it. 2 Kent's Com., 459; Story, Conf. Laws, secs. 280-201; 3 Am. & Eng. Encycl. Law, 543-4; Falls v. U. S. Savings Co. 38 Am. St. Rep., 195, (97 Ala., 417). A corporation, though chartered with express purpose of holding real estate, will not be permitted to exercise this right in a state with whose policy in respect to perpetuities its object conflicts. Carroll v. East St. Louis, 67 Ill., 568.

Comity will not permit a foreign corporation to exercise powers within the State which a domestic corporation of the same kind is not permitted to exercise under the Constitution and policy of the State. 6 Thomp. on Corp., sec. 7885. All their rights are subject to domestic law. 6 Thomp. on Corp., sec. 7886. Foreign corporations cannot exercise powers not granted to domestic corporations. Wharton, Conflict of Laws, sec. 105a; Green's Brice's Ultra Vires (1880), 4, note a.

It is a well established principle that the rule of comity, where there is a conflict of laws, cannot prevail so as to allow a foreign law to counteract a general prohibitory law which regulates the policy of the State or in which all the citizens of the State are interested. The principle of comity between foreign states does not extend to the recognition of liens given by foreign law, when it would operate prejudicially to the rights of others in the country where such lien is asserted. 7 Lawson's Rights & Rem. sec. 3715; Pope v. Hanke, 155 Ill., 617.

There is no absolute right to have the transfer (lien) respected, where the property is located in a country different from the owner's domicile. It is only on a principle of comity that it is ever allowed. This principle of comity always yields when the laws and policy of the state where the property is located has presented a different rule of transfer from that of the state where the owner lives. Green v. Van Buskirk, 7 Wall., 150-1.

The lex situs governs when a mortgage is executed in a state other than that in which the property is situated. Though it be executed according to the requirements of the law of the domicil of the owner in another state, the mortgage will be invalid as against attaching creditors in the state where the property is located, unless the mortgage conforms to the

laws of the latter state. 7 Lawson's Rights & Rem., sec. 3728. As to liens on movables the lex rei sitae prevails. Wharton, Conflict of Laws, sec. 318, 317. A mortgage of chattels is governed by the laws of the place where the chattels are located at the time of the execution of the mortgage. Ames Iron Works v. Warren, 40 Am. Rep., 260.

A title to personal property acquired in invitum under foreign insolvent or bankrupt laws, good according to the laws of the jurisdiction where the proceedings were taken, will not be recognized in another jurisdiction where it comes in conflict with the rights of creditors pursuing their remedy there against the property of the debtor, although the proceedings were instituted subsequent to and with notice of the transfer in insolvency or bankruptcy. Barth v. Backus, 140 N. Y., 230; Faulkner v. Hyman 142 Mass., 53; Rorer's Interstate Law, 138. Where the assignment is opposed or repugnant to the policy of the laws of the state in which the goods are situated and where it is sought to attach them, there the assignment will be held to be void so far as domestic creditors are concerned, but as to foreign creditors it has been held that if valid where made, it will be valid everywhere. 8 Am. & Eng. Encycl. Law, 287. A transfer giving preferences to certain creditors made in another state will not be upheld in this state (Minnesota) as to property situated in this state, if contrary to the policy and laws of this state. Re Joseph Dalpay, 41 Minn., 532.

The general statute of New York prohibiting the assignment or transfer of property by a corporation in contemplation of insolvency is only a part of the local law of that state, which New York corporations do not carry with them when they go to other jurisdictions to do business, and that having no extrá territorial force, it has no application to an assignment of a fund in Illinois executed in Ohio by a New York corporation. Warren v. Bank, 149 Ill., 9.

It is the charter alone which, by the law of comity, is recognized and enforced in other jurisdictions, and not the general legislation of the state in which the company is formed. The general laws and regulations of a state are intended to govern only within the limits of the state enacting them; and the state can have no power to give them extra territorial force. Such provisions do not as a rule, enter into contracts made within the state, if they are to be performed within another jurisdiction. It follows therefore that, where a state statute is enacted for the enforcement of a local policy only, it will not be presumed that such statutory provisions were intended by the state, or by the shareholders forming the corporation, to enter into the charter contract and to regulate the company in its transactions outside of the state, and they will not affect the validity of the dealings of the company in foreign states. 2 Morawetz Priv. Corp., sec. 967.

*Carrigan & Hughes*, for defendant in error.—This corporation, being created by the laws of Iowa and domiciled there, derives its power to

contract from the laws of that state, and its contracts, wherever made,. must be controlled by the laws of that state.   A corporation carries its charter powers with it, wherever it goes, whether it be chartered by a special act or by the general laws of the state creating it; and every person who deals with such corporation is bound to take notice of the law of its creation which was made for the control of its affairs.   Appellant's. vendors submitted their contracts with said corporation to the policy and laws of the state creating said corporation.   Barnett v. Kinney, 147 U. S., 477;  Weider v. Maddox, 66 Texas, 372;  Ryan v. Railway, 65 Texas, 13;  Cantu v. Bennett, 39 Texas, 306;  Hall v. Harris, 11 Texas, 309;. Butler v. Wendell, 58 Am. Rep., 329;  Chaffee v. Bank, 36 Am. Rep., 345;  Thurston v. Rosenfield, 97 Am. Dec., 351;  Gautier v. Franklin, 1 Texas,. 732;  2 Morawetz, secs. 963, 965;  Cobby on Chattel Mort., sec. 64;  Story,. Conflict of Laws, 263; 2 Kent, 454; section 1058 Iowa Code of 1873; Ins. Co. v. Fields, 26 S. W. Rep., 280;  Rue v. Railway, 74 Texas, 475;  Relfe· v. Rundle, 13 Otto, 222;  Ins. Co. v. Gebhard, 109 U. S., 527.

A corporation created under the general laws of Texas, after it has become insolvent and ceased to do business  never to resume, has no right to· prefer one creditor by mortgage of its property to the exclusion of others.. This is not because there is any law in Texas that prohibits such prefer-- ence, but because the law of Texas creating the corporation does not clothe it with authority to thus appropriate property.   The McLeod Artesian Well Company, being incorporated under the laws of Iowa, and being granted such powers by its charter, its mortgage made in pursuance thereof, and conveying property in Texas to certain creditors will. be upheld.   Lyons, etc., Co. v. Perry S. M. Co., 24 S. W. Rep., 16.

The appellant cannot ask that appellee's mortgage be set aside, because· it is an unjust disposition of its property by an insolvent ·corporation, when he and those whose title to said property he holds are themselves attempting to take said property to the disadvantage and exclusion of the· other creditors.   Lang v. Dougherty, 74 Texas, 232.

The court did not err in holding that the rights of appellee under said' chattel mortgage was governed by the laws of Iowa instead of the laws of Texas.   This is not by reason of the comity of the courts  but the comity· of the nation, which is as binding as any other law.   Weider v. Maddox,. 66 Texas, 372;  2 Morrawetz, Corporations, sec. 962.

The laws of Iowa apply to this mortgage, whether it was executed in· the state of Iowa or in the State of Texas.   Rue v. Railway, 74 Texas, 475;. Ins. Co. v. Fields, 26 S. W. Rep., 282.

It does not rest with the discretion of the court to give or deny effect· to this mortgage according ·as it may appear or not appear injurious to· the rights of the citizenship of this State.   Such matters should be a· subject of legislative and not of judicial discretion.   This mortgage is· valid here by the comity of the nation and not ·by the comity of the court. Weider v. Maddox, 66 Texas, 377;  Story, Conflict of Laws, 390;  Guillander v. Howell, 35 N. Y. 659;  Morrawetz on Corporations, sec. 962.

It is true that this court has held that an insolvent corporation cannot make a preferential mortgage; but we insist that that decision was based upon the fact that our statutes limited corporations chartered by this State from making preferences. Lyons, etc., Co. v. Perry S. M. Co., 86 Texas, 152. The common law recognized that corporations could make the same preferences that an individual could. Gould v. Railway, 52 Fed. Rep., 680, and authorities there cited.

Corporations created under the laws of Iowa have and possess the statutory right to make preferential mortgages, and the mortgage in question was valid in the state of Iowa, where it was made. 72 Iowa, 666; Garett v. Plow Co., 70 Iowa, 697, and cases cited. In this latter case the court said: "No reason can be given why a director who holds a valid debt against his corporation may not, though it be insolvent, in a fair and honest way, take its property in security." We call your attention to the long line of cases cited in said case upholding preferences made by insolvent corporations in Iowa. It must of necessity be admitted that an insolvent corporation created by the laws of Iowa can make preferences in disposing of its property.

A mortgage given by an Iowa corporation on personal property in Texas, is valid even though said corporation is insolvent and has ceased to do business. Why? Because, if it is valid under the laws of Iowa, which created the corporation, it must therefore be valid everywhere. On this point we think that Judge Stayton has left no room for argument in the case of Weider v. Maddox, 66 Texas, 372.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals made the following statement of the case and conclusions of fact:

"On the 1st day of March, 1892, the McLeod Artesian Well Company, a private corporation created by the laws of Iowa, and domiciled there, executed to Mary E. Bell its note for $1000, for money loaned it by her, payable one year after date thereof. On the 3d day of June, 1893, the McLeod Artesian Well Co. executed to Mary E. Bell a chattel mortgage dated June 3, 1893, conveying to her certain property situated in Wichita Falls, Texas, belonging to said company, for the purpose of securing said debt. The mortgage was signed and acknowledged by John E. Craig, the president of said company, on the 3d day of June, 1893, in Iowa, and was sent by him to Rice B. Bell, secretary and treasurer of the said company, who was then temporarily stopping at Wichita Falls, Texas, who also signed and acknowledged said mortgage on the 21st day of June, 1893, at Wichita Falls, and deposited and filed the same on that day with the County Clerk of Wichita County, Texas, to be registered as a chattel mortgage. At the date of the execution of this mortgage, the McLeod Artesian Well Company, by its same officers, executed two other mortgages conveying this property and all its other property in Texas, except a few articles at Fort Worth, Texas, of nominal value, one to secure Mrs. Craig in the sum of $2000, and one to secure Mrs. Sanford in

the sum of $1000. The McLeod Artesian Well Company is a corporation incorporated by the laws of Iowa in 1891, its stockholders all being residents of Iowa. It has always maintained its principal office at Keokuk, in the state of Iowa, and its president and its officers all reside in said state. Said mortgage was executed in the state of Iowa for the purpose of securing Iowa creditors. At the time of the execution of said mortgage the McLeod Artesian Well Company was insolvent and had ceased to do business. The laws of Iowa allow an insolvent corporation that has ceased to do business to prefer its creditors. Such power is granted to it by the laws constituting its charter. Said mortgage in favor of Mary E. Bell was given on property situated in Wichita County, Texas, and the same was properly filed and registered by the clerk of said county on the 22d day of July, 1893, and after said mortgage had been properly filed, W. R. Kent brought suit in the County Court of Wichita County, Texas, against the McLeod Artesian Well Company for $972, and in said suit procured a writ of attachment and caused it to be levied upon the property described in said mortgage, and, after said judgment in said cause in his favor foreclosing said attachment, had said property sold under an order of sale issued from said court on the 4th day of October, 1893, at which sale W. R. Kent bought in all of said property for the sum of $30. Afterwards, to-wit, on or about the 1st day of February, 1893, he sold said property, which was then situated in Wichita Falls, Texas, to J. W. Sparger, and Sparger sold it to J. B. Fowler, and delivered the same to him in Hill County, Texas. That at the time of said attachment and sales the mortgage of Mary E. Bell was on file in the office of the county clerk of Wichita County, Texas, and the property was also in said county. On the 6th day of October, 1893, the appellee, Mary E. Bell, brought this suit in the District Court of Wichita County, Texas, against the McLeod Artesian Well Company, on said note for $1000, interest and attorneys' fees, and to foreclose said chattel mortgage given to secure said note. W. R. Kent was made a party defendant in this suit. On the 27th day of March, 1894, the appellees filed an amended original petition in this suit in which they made J. B. Fowler a party defendant, alleging that he had converted a portion of said property for which Mary E. Bell had a mortgage, and asked for a judgment against said Fowler for the value thereof. On the 24th day of November, 1894, the case was tried before the district judge without a jury, wherein he rendered a judgment in favor of the appellee against said Artesian Well Company for the amount of her debt, interest and attorneys' fees, also foreclosing her said mortgage lien as against all defendants, also rendered judgment in favor of appellees against defendant J. B. Fowler for the value of the property taken by him. J. B. Fowler alone prosecutes this appeal."

The only question which we find it necessary to consider is, was the mortgage given by the McLeod Artesian Well Company in favor of Mrs. Bell valid? If it was not, she cannot maintain this suit to foreclose it,

whether the defendant acquired title or not under the judgment fore-closing the attachment lien.

The question involved is this, could the McLeod Artesian Well Company, a corporation doing business in this State, but created under the laws of the state of Iowa, being insolvent and having ceased to do business make a mortgage upon its property in this State giving a preference to one or more creditors over others, which mortgage a corporation created under the laws of this State could not have made under similar conditions? In other words, do the general laws of another state govern in the interpretation of a contract made by a corporation of such state with reference to its property situated in this State, when such contract is in violation of the laws or public policy of this State?

Mr. Thompson, in his recent work on Corporations, volume 6, section 7885, states the rule, which be believe to be correct, as follows: "Without attempting to enumerate in a single section all the cases to which this comity does not extend, it may be observed, in the first place, that it does not extend so far as to concede to foreign corporations the powers which their own charters do not permit them to exercise, nor so far as to permit a foreign corporation to exercise powers within the state which a domestic corporation of the same kind is not permitted to exercise under the Constitution and policy of the state."

This rule is well sustained by the authorities, of which we cite the following: Falls v. U. S., &c. B. Co., 97 Ala., 417, 38 Am. St. Rep., 194; Guilford v. Tel. Co., 59 Minn., 332, 50 Am. St. Rep., 407; Hutchins v. The N. E. Coal & Mining Co., 4 Allen, 580; Milnor v. Railway, 53 N. Y., 363; Rorer on.Interstate Law, 288.

Morawetz on Private Corporations, section 976, volume 2, states the proposition thus: "It is the charter alone which is recognized by the law of comity and not the general legislation of the state in which the corporation was formed. The word charter is here used to signify the agreement between the shareholders of the corporation, whether this agreement be contained in a special act of the legislature or in articles of association or in either of these taken in connection with certain general laws of the state.

"The law of comity merely enables the corporators to exercise the franchise of acting in a corporate capacity in foreign states, and the extent of this franchise is determined by the agreement entered into when the charter was accepted. The laws of the state where the corporation was formed by the agreement of the corporators are regarded only so far as they determine the scope and validity of this agreement itself.

"The general laws and regulations of a state are intended to govern only within the limits of the state enacting them, and the state would have no power to give them extra territorial force * * * * It follows therefore that if a statute enacted by a state, whether as a general law or a special provision in the charter of a corporation, was enacted for the enforcement of a local policy only, it would not be presumed that

such statutory provision was intended by the state or by the shareholders forming the corporation to enter into the charter contract and to regulate the company in its transactions outside of the state, and such enactment will therefore not affect the validity of the dealing of the company in foreign states."

Applying these principles of law to the facts of this case, it follows that, if the mortgage in question was made contrary to the laws of this State or to its public policy, it is void, and conferred no rights upon the mortgagee. A corporation created in this State, which has become insolvent and has ceased to carry on its business, cannot make any disposition of its property which gives a preference to one or more creditors over others, for the reason that, upon insolvency and cessation of the business, the assets of the corporation by operation of the law becomes a trust fund in the hands of its directors to be disposed of for the benefit of its creditors, and any disposition which discriminates between such creditors is a violation of that trust. Lang v. Dougherty 74 Texas, 226; Hardware Co. v. Mfg. Co., 86 Texas, 143.

If the McLeod Artesian Well Company had been a domestic corporation and had made the mortgage in question under the same conditions it would be void because contrary to the laws and public policy of this State, as declared in the decision of its court as above cited; and it must be so held in this case unless its validity can be supported upon the ground that it is sustained by the laws of the state of Iowa.

Counsel for the defendants in error claim that the mortgage in question in this case is valid for the following reasons:

1st. That there is no law in Texas which renders such transaction invalid, but that the decisions of our courts, and especially that of Lyons-Thomas Hardware Co. v. Manufacturing Co., rest upon the ground that the statutes of this State do not confer upon corporations power to make such instruments.

2d. Because the transaction is to be governed by the laws of Iowa, where the contract was made, and in which state it would be valid, and not by the laws of Texas.

In the case of Lyons-Thomas Hardware Co. v. Manufacturing Co., cited above, Judge Stayton reviewed the authorities exhaustively to show that an insolvent corporation which had ceased to do business could not make a mortgage giving preferences to some creditors over others, for the reason which we have before stated, that upon the happening of such conditions the directors of the corporation by operation of law become trustees charged with the distribution of its assets among all of its creditors, and thus being constituted trustees they could not deprive the beneficiaries of that trust of their proportionate part of the assets of the corporation by means of conveyances of the property so held to one or more of the creditors in preference to the others. The decision is not placed upon the ground that the authority is not conferred upon the corporation by the laws of this State, as is insisted by counsel for the

defendant in error, but in that case it was insisted that a corporation had the inherent right at common law to make such a conveyance. Judge Stayton conclusively showed, from the best considered authorities, that the rule claimed applied only to common law corporations, and not to those created by statute, and then, in order to conclusively show that the rule announced as applicable to insolvent corporations applied in this State under such circumstances, he examined our statutes, from which examination it appeared that no such authority had been either directly or by implication conferred upon corporations in this State. That case clearly settled the law upon this question in Texas, and it is no longer open to controversy that an insolvent corporation cannot, in this State, when it has ceased to perform the business for which it was created, dispose of its assets so as to deprive its creditors of a fair and just distribution of the same.

In support of the second proposition above stated, it is claimed that this mortgage having been executed in Iowa, where the law permitted such disposition of the property, it is to be governed in its construction and enforcement by the laws of that state. We will remark however, that it was made with a view to its enforcement in Texas, and embraced alone property situated in Texas. In support of the position taken by counsel, above stated, the following cases are cited: Ryan v. Railway, 65 Texas, 13; Weider v. Maddox, 66 Texas, 372; Rue v. Railway, 74 Texas, 479.

We will briefly review some of the cases cited by the defendant in error, which in our opinion are not in point as authority upon the question here involved.

In the case of Ryan v. Railway the question was whether the law of Missouri or the law of Texas should govern in the construction of a contract for the shipment of goods from St. Louis into Texas over the Missouri, Kansas & Texas Railroad. It was a case in which performance of the contract began in Missouri and terminated in Texas, and the court held that under such circumstances the law of the place of making the contract would be applicable.

In Weider v. Maddox, an assignment made in the state of Missouri in accordance with the laws of that state, which embraced personal property situated in Texas, was upheld against the lien of an attachment levied in this State after the assignment was executed and recorded; but it was expressly shown by the opinion that the terms of the assignment did not in any way conflict with the assignment law of this State.

Rue v. The Mo. Pac. Ry. Co. involved the validity of a contract made under these circumstances: Talmage, the general manager of the railroad company, entered into a contract with Rue, by which the latter was appointed stock agent for the railroad company in Texas at a salary of $2000 a year, and in addition thereto the stock yards and feeding pens at several points in Texas and the Indian Territory were leased to Rue for a number of years and he given the exclusive right to feed cattle

shipped over that railroad. By the terms of the contract, the profits of this business were to be divided between Rue and Talmage, which was in violation of the constitution and laws of the state of Missouri, in which state the contract was made and in which state likewise the railroad company was chartered. There was no law in Texas which would uphold such a contract as that made between these parties. The contract was so obviously contrary to good morals, fair dealing and honesty towards the railroad company on the part of its officer, participated in by Rue, that it would seem to have been contrary to the public policy of this State, and therefore there was no conflict between the law of Missouri and the laws or public policy of Texas upon this question.

We are not called upon in this case to approve or dissent from the opinion delivered in that case. It is not authority in the case now before the court and cannot be held to control or influence a decision of the question now under consideration.

Defendants in error's counsel cite matter of Estate of Prime, 136 N. Y. 347, as relevant to the questions under discussion. The only point in that case which could be considered as in the remotest degree akin to this is thus expressed in the syllabus of the case: "A state statute granting powers and privileges to corporations, in the absence of plain indications to the contrary appearing on the face of the act, applies only to corporations created by the state." Manifestly that case has no relevancy to any question now before the court.

In Barth v. Backus, 140 N. Y., 230, cited by counsel, the court refused to sustain an assignment, made by a Wisconsin corporation doing business in the city of New York, of personal property in that state, because the law of Wisconsin upon the subject of assignments required creditors to accept the assignment and discharge the assignor, and was considered by the New York court to be in the nature of a bankrupt or insolvent law. If at all applicable, that case does not sustain the contention of the defendant in error. We deem it unnecessary to review the case at greater length.

We are earnestly asked to carefully examine Vanderpoel v. Gorman, 140 N. Y., 563, which, upon careful examination, we find to be a case in which a corporation created under the laws of New Jersey, doing business in the state of New York, made a general assignment for the benefit of all of its creditors without preferences. An attachment was levied in the state of New York upon the property assigned and the assignee brought suit to recover damages for the levy upon and sale of the property. The defendant in that suit claimed that the assignment was void on account of the provisions of a statute of the state which, among other things, provided: "That no corporation shall make any transfer or assignment to any person whatever in contemplation of its insolvency, and every such assignment is declared to be void." It was claimed that the foreign corporation was embraced in the general language of this statute. The court held that the law above quoted did not apply to for-

eign corporations. That court also held that the right to make such an assignment as was made in that case was inherent in all corporations unless prohibited, and not being prohibited to the foreign corporation by the terms of the statute, the assignment was not violative of any law in the state of New York. There are two marked distinctions between that case and this—

1st. The instrument in that case was of a character which the laws of New York permitted to be made and which the courts of that state held all corporations had the inherent power to make, unless restrained therefrom. In this case the instrument is one which the courts of this State held that no corporation has the power to make unless authorized by statute of this State.

2d. In that case the instrument was a general assignment distributing all of the assets of the corporation equally among the creditors, which is not denounced by any decision in this State. While the instrument in this suit is one which is not approved by the New York case, but is directly and emphatically denounced by the laws of this State as embodied in the decisions of its courts.

The two cases are so dissimilar that the one is not authority in the consideration of the other.

It is also claimed by the defendant in error that, since the plaintiff in error is not seeking to have the property equally distributed among all the creditors of the corporation, he cannot prevail in this suit, and Lang v. Daugherty, 74 Texas, 226, is cited in support of that proposition. The defendants in error were plaintiffs in the lower court, in which they did not seek an equal distribution of the proceeds of the property among the creditors of the corporation, but sought to apply it all to the satisfaction of their debt. The doctrine announced in the case last cited applies with great force to the rights of the defendants in error, and effectually denies to them any right to recover in this case, the mortgage which they are seeking to foreclose being held invalid. The fact that the plaintiff in the attachment suit proceeded contrary to law and appropriated to his exclusive use a part of the trust fund will not justify the courts in taking from the purchaser that which was unlawfully appropriated, and with no greater legal right in them, turning the property over to the defendants in error, to be by them applied to their exclusive benefit.

If the power claimed for the Artesian Well Company had been explicitly expressed in its charter, it could not have been exercised in this State by that corporation, because in direct conflict with the laws and policy of this State, and in such conflict the law of this State must prevail over the foreign law. Falls v. U. S. Bldg. Co., 97 Ala. 194.

We hold that the mortgage executed by the McLeod Artesian Well Company to Mrs. Bell was null and void, and that the District Court erred in foreclosing it upon the property embraced therein and in giving judgment against the defendant Fowler for the said property, or the value of any part thereof, and that the Court of Civil Appeals erred in affirming

the said judgment.   It is therefore ordered that the judgments of the District Court and the Court of Civil Appeals be reversed as between the plaintiff in error and the defendants in error, and the judgment here be rendered that no foreclosure of the said mortgage be had upon the said property and that the said J. B. Fowler, the plaintiff in error, go hence without day and that he recover of the defendants in error, Mary E. Bell and Rice H. Bell, all costs in this behalf expended in all of the courts.   ·

*Reversed and rendered.*