## MARTIN v. FARM & HOME SAVINGS & LOAN ASS'N OF MISSOURI.

### No. 13169.

Court of Civil Appeals of Texas. Fort Worth.

March 1, 1935.

Rehearing Denied March 29, 1935.

Benson & Benson, of Bowie, and Phillips, Trammell, Chizum, Estes & Edwards and Clayton L. Orn, all of Fort Worth, for appellant.

Donald & Donald, of Bowie, and J. B. Robertson, of Austin, for appellee.

BROWN, Justice.

Dan L. Martin, appellant, and his wife owned two vacant lots in the city of Bowie, Montague county, Tex., on which they desired to build their home. They owned no other real property in Montague county at that time.

They needed a $3,000 loan, payable through an extended period, to assist them in building their home, and on the 17th day of July, 1925, made a written application, through its local agent, to the Farm & Home Savings & Loan Association of Missouri, a foreign corporation then transacting business by permit in Texas.

The application describes the two lots, recites that they are vacant, that no improvements have yet been undertaken, that no mechanic's and materialman's lien has been executed on the premises, but that when such liens are created the lender will be fully subrogated to all of the rights of the original lienholder, and same duly extended; that the property is being improved for homestead purposes and will be occupied as such.

In this application for the money loan of $3,000 Martin nowhere subscribed for capital stock in the loan association. This application states that Martin is not the owner of any shares of stock, and states further that Martin understands that the monthly dues on the stock which he will carry with the loan will be $24 and that the monthly interest payment on the loan will be $19.50, and that the total monthly payment will be '$43.-50 for 97 months from the date of acceptance of the loan.

Martin, on the same day, signed a written subscription for 30 shares of class D stock in the loan association, subject to its by-laws, rules, and regulations. The certificate of stock was actually issued to Martin, dated September 19, 1925, and recites that Martin is the owner and registered holder of 30

shares of stock of the par value of $100 each, and that the holder agrees to pay to the association "$24.00 on or before the 20th day of each month for 97 consecutive months from and after the date of this certificate, and no further payments will be required; if all payments have been made, as herein provided, then at the expiration of 97 months from the date of this certificate, or as soon thereafter as the earnings, together with the amount paid in, are equal to the face of this certificate, the holder will be paid its par value, or at the expiration of 97 months from the date of this certificate the holder may at his option demand and receive the book value in full settlement, or let the earnings accumulate to the par value of the stock." The certificate was assigned to the association. On August 15, 1925, Martin and wife made a 60-day mechanic's and materialman's note in the sum of $3,000, payable to the order of Waples-Painter Company, and on the 17th day of August, 1925, duly executed a mechanic's and materialman's lien on the lots in controversy to secure the above note and the erection of the improvements contemplated. The association alleged that the payee in the lien note indorsed same over to the association without recourse.

On September 19, 1925, Martin and wife executed a note, payable to the order of the loan association, which reads as follows: "For value received we, or either of us, promise to pay to the Farm and Home Savings & Loan Association of Missouri, the following sums of money, viz: The sum of Twenty-four Dollars, the same being the monthly dues on the thirty shares of the capital stock of said association, represented and evidenced by the certificate thereof numbered 86372 this day pledged by us to said Association to secure a loan of Three Thousand Dollars; and the sum of Nineteen and 50/100 Dollars; the same being the interest due monthly upon said sum so borrowed by us. And we promise to pay said Association at its Home Office at Nevada, Mo., all of said sums of money, amount in the aggregate to Forty-three and 50/100 Dollars on the 20th day of each and every month, and continue such monthly payments for a term of ninety-seven months from date hereof. * * * And we further agree in case of default in the payment of said sums of money, or any part thereof, monthly as aforesaid, to pay all fines and penalties assessed on account thereof, in accordance with the rules, regulations and by-laws of said association, and if, in case of default, the stock pledged and the security given to secure said monthly payments shall, upon the sale thereof, be insufficient to repay said Association any balance which may be due and owing on said loan, we promise and agree to fully pay and discharge same; if we shall fail for a period of six successive months to pay dues, interest, or other charges required by the by-laws, or shall become indebted to the Association in a sum equal to the gross amount of the dues and interest for a period of six months, then the whole of this obligation shall become due and payable and may be collected by law. The payment of said monthly sum aggregating Forty-three and 50/100 Dollars each and every consecutive month hereafter until the maturity of said stock and the payment of all fines, penalties, advances, liens and other charges shall entitle all of said certificate of stock to redemption by said Association at the par value thereof, and the said shares of stock evidenced by certificate number 86372 so taken and redeemed shall be taken by said Association in full satisfaction of this obligation and deed of trust or mortgage to secure the same. * * * "

The note further provides for the usual attorneys' fees, and concludes with the stipulation that it may be paid off at any time upon giving 30 days' written notice to the association, in which event the note or obligation may be credited on such repayment of the loan with withdrawal value of the stock carried with same.

On the date the above note was executed, Martin and wife executed a deed of trust, conveying the real property in question to Lee B. Ewing, trustee, and likewise conveying the 30 shares of capital stock in the association, and reciting that the conveyance is intended as a trust for the following purposes:

"To secure unto the said Association, its successors and assigns, the full and prompt payment of the sum of Three Thousand and Thirty Dollars, according to the terms and conditions of certain notes or obligations, bearing even date herewith, and executed by the said Dan L. Martin and his wife, Ada B. Martin payable to the order of said Farm and Home Savings and Loan Association of Missouri, at its Home Office, Nevada, Missouri, as follows:

"One note for the sum of Three Thousand Dollars, One note for the sum of Fifteen Dollars, due in Thirteen (13) months, and one note for the sum of Fifteen Dollars, due in Twenty-five months: and to further secure the prompt and full repayment of any

and all sums which said association, its successors, or assigns, may pay or advance for taxes, insurance, or for maintaining the property above described in proper repair, and free of liens, according to the stipulations hereinafter set forth, and to further secure the prompt and strict performance of these and all other covenants and stipulations of this deed, and of all obligations incumbent on said Dan L. Martin and his wife, Ada B. Martin, as a shareholder in, and as a borrower from said Farm and Home Savings and Loan Association of Missouri, under its Charter-By-laws, Rules and Regulations now existing, or which may hereafter lawfully be made, altered or amended. * * *

"That the hereinbefore described notes are executed in renewal and extension of a certain Materialman's Lien Note in the sum of $5,000.00, executed by Dan L. Martin and wife, Ada B. Martin, dated August 15, 1925, due on or before October 15, 1925, to secure which a Mechanic's and Builder's Lien Contract was executed on August 17 1925, by the said Dan L. Martin and wife, Ada B. Martin, covering the property as hereinbefore described; the said note as herein referred to being payable to Waples-Painter Company, Bowie, Texas, and bearing interest at the rate of 10% per annum from maturity date; said Mechanic's & Builder's Contract being executed prior to the time any material or lumber was furnished. And recorded in Volume 4, page 78, of the Mechanic's Lien Records of Montague County, Texas, to which reference is hereby made for more complete description of said debt, notes and liens and it is further agreed in addition to the foregoing that the beneficiary herein and its assigns shall be and are hereby subrogated to all liens and encumbrances, contract or governmental, or whatsoever kind or nature, paid, lifted or extended by the moneys advanced or to be advanced by the terms of this instrument, whether such advancements or liens are herein specifically set out or not."

The instrument further provides for prompt payment of all taxes or assessments of whatever character made or charged against the premises, and for full coverage by insurance; and provides that the association may pay the taxes, charges, and insurance and thereby protect itself. The instrument further provides:

"1. That each and every payment herein mentioned, or which may become due by virtue of the obligations herein described, or under any of the terms, conditions and stipulations of this conveyance, shall be payable, without diminution, at the office of said As-

sociation, at the City of Nevada, in the State of Missouri.

"2. That the obligation hereby secured, and this conveyance, and all the terms and conditions of each, are made and executed, and shall be in every instance construed as under, and in accordance with the laws of the State of Missouri, and the Articles of Incorporation, By-laws, Rules, and Regulations of said Association, as the same now exist, or as the same may be hereinafter lawfully changed, varied, or amended, and anything in the laws of any other state to the contrary notwithstanding; it being specifically understood and intended by the parties hereto that all the transactions between them with reference to this conveyance, and the loan and advances hereby secured, and the stock and certificates hereby pledged have been made and had under and in accordance with the laws of the State of Missouri.

"It is also agreed that should default be made in the payment of any of the items mentioned in this conveyance, or in the obligations according to the terms thereof, and according to the By-laws of said Association, its Rules and Regulations, and should such default continue, in whole or in part, and so remain unpaid for a period of Six months from due dates, then the said Association, its successors and assigns shall have and is hereby given the option to, without notice, declare mature, due and immediately payable the above described principal obligation, together with all arrearages, advances and penalties, although the period herein, and the By-Laws, Rules and Regulations of said Association provided for payment of said obligation shall not have then expired; and in event of proceedings foreclosing this deed of trust, through legal proceedings or otherwise, the indebtedness hereby secured shall bear interest from date of default at the rate of 7.8 per cent per annum in lieu of further monthly installments, and the shares of stock above referred to shall be canceled and the surrender value thereof, as provided in the By-Laws of said Association, as of the date of the first default, shall be applied in reduction of the sums due on this deed of trust.

"It is further agreed and understood that in the event of a failure or default on the part of the grantors to keep, and to fully and promptly perform any one of the covenants and agreements herein contained, then or in either event, the said Lee B. Ewing, Trustee, or his successors or substitutes in this trust, is authorized and empowered, and it is made his or their special duty, at the request of said Association, its successors or

assigns, at any time after such default, as aforesaid, to sell the above described property to the highest bidder, for cash, at the Court House door in Montague County, Texas, at public vendue, between the hours of ten o'clock in the forenoon, and four o'clock in the afternoon on the first Tuesday in any month, after giving public notice of the time, place and terms of such sale, and the property to be sold, after first advertising the time, place and terms of the sale of the above described property for at least twenty-one days successively, next before the date of sale, by posting up written or printed notices thereof at three public places in the County where said real estate is situated, one of which shall be at the Court House door of such County, and after said sale, as aforesaid, to make, execute, and deliver to the purchaser or purchasers thereof, in grantors' names, good and sufficient deed or deeds to the property so sold, and in fee simple, and receive the proceeds from such sale or sales, and apply the same in the following order, to-wit:

"1. To payment of the expenses of advertising the said sale or sales;

"2. To a commission to the trustee making such sale or sales, of five per cent of the entire amount received at said sale or sales;

"3. To the payment of the amount then owing and due to said Association, its successors or assigns, according to the terms of this conveyance, and the obligation above described and hereby secured, and according to the By-Laws, Rules, and Regulations of said Association;

"4. To pay the balance remaining from sale or sales, if any there be, to the order of the grantors, or their assigns; and such sale or sales as shall be so made by the trustee above mentioned, or by any successor or substitute trustee, shall forever be a bar against the grantors herein, their heirs, successors and assigns; and should the said Lee B. Ewing, Trustee above named, fail or refuse, or for any reason be unable or disqualified from acting hereunder, the said Association, its successors or assigns, shall have the power, and authority to that end is now given and granted, to appoint a substitute Trustee, which appointment shall be fully and effectively evidenced by an acknowledged instrument, signed by said Association, its successors or assigns, and such substitute trustee shall be vested with all the powers, duties and obligations herein conferred on said original trustee and his acts and deeds shall have the same binding force and effect as though originally named and constituted

herein; and it is distinctly stipulated and agreed that in case of any sale or sales hereunder, all prerequisites thereto shall be presumed to have been done and performed, and that in any conveyance given or executed by virtue hereof, all recitals therein made as to the conditions, facts, advertising, posting, and to the default or defaults in payment of the amounts secured or advanced, or as to the breach or failure to perform any of the covenants herein contained, or as to the appointment, or of the request made upon the trustee or his substitute, to enforce and exercise the powers herein granted, or as to any other preliminary act or thing done or to have been done including inability, failure, refusal or disqualification of original trustee to act shall be taken in all courts of law or equity, as prima facie evidence that the recitals and statements of facts so recited are true; and all the acts and deeds of the said trustee, his successors or substitutes, lawfully done in the premises, are, in all things by the undersigned absolutely ratified and confirmed.

"It is further understood and agreed that all the covenants and conditions herein contained shall run with the land above described, and all subsequent owners of said land, or those, at any time, claiming the same, shall be fully bound by the terms as though original parties hereto, and any law or laws which may be hereafter enacted, in any way extending or attempting to extend the time within which the lien hereby given and granted shall be enforced, or creating or attempting to create a period of redemption from any sale made in the collection of the obligations hereby secured, are, in all things, expressly waived and renounced.

"And it is further understood and declared to be the intent of the parties hereto that the grantors are bona fide stockholders in said Association, and have subscribed for said stock, and make payments hereon as an investment or method of saving, and in no sense or particular are the said stock payments to be considered as made on the loan or advances made by said Association; and it is mutually agreed that it is not the intention of the parties hereto to provide for the payment of interest in excess of ten per cent per annum on the principal sum advanced by said Association, and from time to time remaining unpaid and accruing. It is agreed that aside from attorney's fees, trustee's fees and reimbursements for any moneys that may be paid by said association under this contract, by way of advancements for taxes, insurance, levies or assessments with interest thereon as herein provided; under no

circumstances whatsoever shall the said obligors herein be required to pay said Association a greater sum of money, whether interest, premiums, fines, penalties, or under any other name, than the aggregate of the principal sum so advanced by said Association together with interest thereon from the date hereof until paid, at the rate of 7.8 per cent. per annum, etc., as above excepted that may be elsewhere herein provided for is understood to be an error in calculation, and if collected, shall be returned to the said grantors.

"Now, therefore, if all and singular the obligations of the undersigned to said Association herein described, and secured hereby, and which may arise by virtue hereof, shall be fully and promptly paid, and all the covenants and agreements of the undersigned with reference thereto having been faithfully kept and performed, then and in that event only, this conveyance becomes null and void, and these presents shall be released in due form at grantor's cost; otherwise to continue in full force and effect."

Appellant Martin made the 97 monthly payments provided for in his obligations, and demanded of appellee association that it release unto him the deed of trust lien executed upon his homestead, which demand was refused, and appellant filed his suit in the district court of Montague county to purge his homestead of such lien.

Appellee association, in answer to appellant's suit, pleaded that it is a corporation, organized under the laws of Missouri, and had a permit to do business in Texas during the time of its transactions with appellant, and that appellant had subscribed for its capital stock; that the certificate was issued to him; that he applied for the $3,000 loan and indorsed his stock over to the association as part security therefor; that he had executed a mechanic's and materialman's lien and note on the property in controversy; that it became, in due course, the owner and holder of the note and lien; that appellant and wife executed a renewal and extension note and the deed of trust lien now sought to be removed from their premises. Appellee association likewise pleaded fully its by-laws and the decisions and laws of the state of Missouri, and that, since appellant entered into the transaction with appellee, business conditions had been such that the association was not able to make the profits contemplated, and that by reason of its financial condition, and the condition of the account between it and appellant, appellant was still indebted to it in the sum of $514.31, which

indebtedness it was entitled to collect from appellant. The contention, as we gather it from appellee's brief and the record, being that the amount claimed by appellee as being due it from appellant is the difference between the $3,000 par value of appellant's stock and the sum to which such stock was "written down" by reason of the financial condition of appellee and the proceedings had in Missouri because of its financial distress. If we are correct in our attempt to digest appellee's contention, it appears that appellant Martin, by reason of his transactions with appellee, owes appellee association two obligations for $3,000 each, instead of one; namely, that appellant has borrowed from appellee $3,000 to renew a valid indebtedness incurred by appellant in the building of his home, and also entered into a contract with appellee to buy $3,000 worth of its capital stock. It is true that in setting up its defense to appellant's suit, brought to free his home from the deed of trust lien, appellee throws these two transactions together, and asserts that it has credited appellant's debt with the value of appellant's stock, based upon the 97 payments made by him and agreed to be made by him, but asserts and shows that such stock lacks $514.31 of being worth its par or face value. In other words, the association says: "If business had been good and we could have taken the 97 monthly payments that appellant made and the payments that other borrowers and stockholders made; and the moneys we had on hand and could have done well enough to have made appellant's stock worth $3,000.00 when he made his last payment, we would have discharged his entire indebtedness and we would have released his lien. But the value of his stock now is $514.31 less than its face value and we decline to release his lien."

It will be noted that the appellee association filed no cross-action and asked for no judgment against Martin on the indebtedness of $514.31, which it claims is still due by Martin to it.

The case was tried to the court without the intervention of a jury, and the court rendered judgment denying appellant Martin all relief prayed for, and decreeing that the debt and obligation executed by Martin, together with the lien as created by virtue of the contract existing between Martin and the association, was in all things valid.

▉ We are of the opinion that this cause is to be tried in the light of the law as it exists in Texas, and not in the light of the statutes or decisions of the state of Missouri.

In the application for the loan there is a specific provision that the total monthly payment will be $43.50 for 97 months from the date of the acceptance of the loan. In the stock certificate we find specific provisions that the holder agrees to pay to the association $24 on or before the 20th day of each month for 97 consecutive months from and after the date of the certificate, "and no further payments will be required." The provisions of the certificate and of Martin's contract to pay, as we view them in the light of this record, are such that when Martin has paid, as he did pay, $43.50 per month for 97 months, he has fully discharged his obligation and the lien upon his home should be released. But we wish to go further into this matter and endeavor, if we can, to answer the contention of appellee, to the effect that there are two obligations here and not merely one, and that for such reason appellant is not entitled to the relief he seeks. If it be true that appellee is contending that it is entitled to hold to its lien upon appellant's home by reason of appellant's subscription to it for 30 shares of its capital stock, then the contract for the purchase of the capital stock was made in contravention of the provisions of article 12, § 6, of the Constitution of the state of Texas, which specifically provides: "No corporation shall issue stock or bonds except for money paid, labor done or property actually received." It is undisputed that the stock certificate was issued to appellant at the time he secured the loan of $3,000 from appellee and executed the deed of trust upon his home to secure the promissory note made to appellee. The promissory note provides for payment to appellee of the sum of $24 monthly on the 30 shares of capital stock issued to appellant, and the sum of $19.50 per month, being the interest due monthly on the sum borrowed. There is no claim that Martin paid cash for his stock.

The authorities are so abundant upon the question of the invalidity of the stock transaction that we will cite only a few; namely, Western National Bank v. Spencer, 112 Tex. 49, 244 S. W. 123; Washer v. Smyer, 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320; Kanaman v. Gahagan, 111 Tex. 170, 230 S. W. 141.

It is quite evident that there is no security for the note to pay for the capital stock, for the very simple reason that the security is a deed of trust executed upon appellant's homestead, and the association was particularly put upon notice in the application for the loan that the property was dedicated by appellant and his wife to homestead purposes. It is true that the deed of trust specifically states that it was executed to secure the association in the full and prompt payment of the $3,030 according to the terms and conditions of certain notes or obligations bearing even date with the deed of trust and executed by Martin and wife, and the notes are described as one note for the sum of $3,000, one for the sum of $15 due in 13 months, and one for the sum of $15 due in 25 months; and the deed of trust further recites that the notes described therein are executed in renewal and extension of a certain materialman's note in the sum of $3,000, executed by Martin and wife, dated August 15, 1925, and due on or before October 15, 1925, which was secured by a mechanic's and builder's lien contract executed on August 17, 1925, by Martin and wife covering the property conveyed in the deed of trust. But when we examine the note that was executed by Martin and wife we do not find therein any promise upon the part of Martin and wife to pay the association $3,000. It is true that the figures "$3,000.00" appear in the upper left-hand corner of the note, but the body of the note specifically provides that Martin and wife promised to pay the association "the sum of $24.00, the same being the monthly dues on the 30 shares of capital stock of said association, represented and evidenced by the certificate thereof No. 86372 this day pledged by us to said association to secure a loan for $3,000.00; and the sum of $19.50, the same being the interest due monthly upon said sum so borrowed by us. And we promise to pay said association at its Home Office at Nevada, Missouri, all of said sums of money, amounting in the aggregate to $43.50, on the 20th day of each and every month, and continue such monthly payments for a term of 97 months from date hereof." The note further provides: "The payment of said monthly sum aggregating $43.50 each and every consecutive month hereafter until the maturity of said stock and the payment of all fines, penalties, advances, liens and other charges shall entitle all of said certificate of stock to redemption by said association at the par value thereof, and the said shares of stock evidenced by certificate No. 86372 so taken and redeemed shall be taken by said association in full satisfaction of this obligation and deed of trust or mortgage to secure the same."

It seems clear to us that after 97 months the member, whether a borrower or nonborrowing member, was not required to make any further payments. If he were a borrower, the association had contracted in the note and it was its intention to accept the stock in satisfaction of the borrower's loan, providing

the borrower had not defaulted in his payments.

We find no provision in the certificate of stock that if at the expiration of 97 months the amount paid in, together with the earnings, does not equal the face of the certificate, the holder will pay such deficiency on the stock certificate or the loan, and the question then arises, as we see it, When did appellant become liable to pay to the association the sum of $514.31, and where is any such provision imposing this liability upon him? We find no answer in the record before us to support the contention of appellee.

■ Appellee does strenuously urge that so much of the contract made with appellant which provides that appellant shall in no event be liable for more than 97 monthly payments, provided he is diligent, is not binding on it, because, under the laws of Missouri, the making of such a contract was an ultra vires act; and that, regardless of what appears, from the instruments executed, to be the plain intention of the parties, the laws of Missouri favored a part of the contract, and, under such laws, the association would not be permitted to accept the stock in cancellation of the loan, unless the borrower had paid in sufficient money, when added to the accumulated earnings, to bring the stock to its par value.

Under article 874, R. C. S., foreign building and loan associations doing business in this state are required to conduct such business in accordance with the laws of Texas governing domestic associations. Under the provisions of article 857, R. C. S., appellee had a right to limit the number of payments the borrowing stockholder would be required to make to pay off his loan and secure a release of his incumbrances. Pioneer Savings & Loan Co. (of Minnesota) v. Peck et al., 20 Tex. Civ. App. 111, 49 S. W. 160 (writ refused).

Appellee's efforts to bring into this state all of the laws and all of the decisions of the appellate courts, governing similar contracts within the state of Missouri, will not be recognized in this cause and within this state.

■ There is a marked distinction between the laws of a state which become a part of the corporate charter created therein, and the laws of such state regulating such corporation in its manner of doing business in the state of its creation. A corporation does not take into a sister state either its general legislation or its judicial pronouncements, and such laws and decisions have no extraterritorial force and operation. Fowler v. Bell, 90 Tex. 150, 37 S. W. 1058, 39 L. R. A. 254,

59 Am. St. Rep. 788; Washington-Alaska Bank v. Dexter Horton National Bank of Seattle (9 C. C. A.) 263 F. 304; E. C. Warner Co. v. W. B. Foshay Co. (8 C. C. A.) 57 F.(2d) 656.

In the case of Eastern Bldg. & Loan Ass'n v. Williamson, 189 U. S. 122, 23 S. Ct. 527, 47 L. Ed. 735, the United States Supreme Court held that a building and loan association, incorporated under the laws of the state of New York, could limit the amount of money a borrower would be required to pay in South Carolina. The facts in that case are very much like those in the case at bar.

■ We do not believe the association is in any position to plead that the acts of its officers, in entering into the contract with appellant, which limits his obligation to 97 monthly payments, are ultra vires. The association has permitted appellant to fully perform the conditions imposed upon him by the contract, and has profited by his full performance. It cannot now say that the making of such a contract is beyond the powers of the officers who are responsible for its making. 10 Tex. Jur. § 252, p. 892 et seq.; 7 Fletcher Cyc. "Corporations", (Perm. Ed.) chap. 50, § 3437, p. 620 et seq.; § 3479, p. 631 et seq.; Eddleman v. Wofford (Tex. Civ. App.) 217 S. W. 221.

■ Furthermore, we do not believe the acts of the officers were ultra vires, when applied to a contract made in Texas by virtue of a permit granted unto the association to transact such business here.

Appellee further contends that certain, more or less general, statements, found in the deed of trust, the note, the application for purchase of the stock, and the stock certificate, should be construed as a promise upon the part of Martin to repay the entire sum borrowed, viz., $3,000, and, if mistaken in such contention, that, in all events, there is found, and must be read into Martin's contract, an implied promise to repay such sum.

If we seize either horn of the dilemma, the question then arises: When does the debt of $3,000 become due? On what date will Martin be held in default of his obligation, and how will the default be determined, under his contract? We find no satisfactory answers to these questions in appellee's brief.

If appellee contends that Martin has breached his contract with it, we know that the cause of action against Martin accrues so soon as Martin breaks his contract. But wherein has the contract made by Martin been broken? From the terms of the contract and the undisputed facts, it appears

that Martin has made the payments promised to be made by him.

■ Appellee, if it has a cause of action against Martin, must, of necessity, have one for debt, and a cause of action to recover a debt does not mature until the debt matures or becomes due. Heard v. Ritchey, 112 Mo. 516, 20 S. W. 799.

■ If a note be executed for the express purpose of extending the time of payment of a pre-existing indebtedness, the acceptance of the note suspends the creditor's action until the maturity of the note.

The deed of trust executed by Martin expressly states that the note, secured by such instrument, was given in renewal and extension of the mechanic's lien note theretofore given by Martin and purchased by appellee. As pointed out above, the note provides for 97 payments of $24 per month, and 97 payments of $19.50 per month, covering a period of exactly 97 months, and no more; and the note further provides: "The payment of said monthly sum aggregating Forty-three & 50/100 Dollars each and every consecutive month hereafter until the maturity of said stock and the payment of all fines, penalties, advances, liens and other charges shall entitle all of said certificate of stock to redemption by said Association at the par value thereof, and the said shares of stock evidenced by certificate number 86372 so taken and redeemed shall be taken by said Association in full satisfaction of this obligation and deed of trust or mortgage to secure the same."

We have shown that the stock certificate bound Martin to pay therefor the sum of $24 per month for 97 consecutive months, and that "no further payments will be required." Required to do what? Obviously, to mature Martin's indebtedness for the purchase of the stock.

But the association counters with the proposition that, taking all of the instruments going to make up Martin's contract with it, and the further fact that, under the unlooked-for conditions surrounding the association during the business depression, the association was not able to earn enough to pass sufficient dividends to Martin's credit to make his stock worth par, he cannot deny that he still owes the association $3,000 it loaned to him, and he must, under the broad and general provisions of the instruments creating his contract, continue to pay; the contention being that he must make the same monthly payments he agreed to make, namely, $24 per month on his stock and $19.50 per month interest on his $3,-000 loan. Until when? From appellee's contention, until it is determined by the association that Martin's stock has reached its par value, at which time, the association will redeem the stock, cancel Martin's note and the deed of trust lien, given upon his home. How long will this plan take before Martin gets the relief he thought he had, when he contracted to pay, as is shown by the plain terms of his contract? The association makes no effort to answer this question. It says, Martin must "carry his end of the log" along with all other stockholders, borrowers, and nonborrowers, until all of those who preceded Martin, and all who made contracts concurrently with Martin, receive the same pro rata proportion of dividends that are necessary to bring Martin's stock to its par value. But the deed of trust expressly provided: "It is agreed that aside from attorney's fees, trustee's fees and reimbursements for any moneys that may be paid by said Association under this contract by way of advancement for taxes, insurance, levies or assessments with interest thereon as herein provided; under no circumstances whatsoever shall the obligors herein be required to pay said Association a greater sum of money, whether interest, premiums, fines, penalties, or under any other name, than the aggregate of the principal sum so advanced by said Association, together with interest thereon from the date hereof until paid, at the rate of 7.8 per cent per annum, etc., as above excepted that may be elsewhere herein provided for is understood to be an error in calculation, and, if collected, shall be returned to said grantors."

Martin has paid the association the monthly payments of principal, and interest on the whole $3,000, as he contracted to do, and to require him to continue such monthly payments of principal and interest, until his stock actually reaches its par value on the books of the association, renders null and void the positive stipulation that under no circumstances shall Martin ever be required to pay more than the aggregate of the principal sum borrowed, with 7.8 per cent. interest thereon.

Assuredly, it cannot be seriously contended that the original mechanic's lien, created by Martin and wife upon their homestead, can be enlarged or extended to cover any other indebtedness than the indebtedness provided for in the mechanic's lien note and such other indebtedness as may be fixed thereon under the Constitution of Texas. And yet, it appears to us that appellee here seeks to do that very thing.

Having no valid lien on appellant's home to secure any payments that he may be now in arrears for the purchase of capital stock in

appellee association, he is entitled to have the cloud cast upon the title to his home removed. Believing that there is no contract on appellant's part to pay appellee association any further sums than those already paid, and that, even if appellee's contention that the general provisions of the several instruments before us show either an express, or implied, promise to pay a sum more than the actual note, signed by Martin, provided for, we do not believe that the deed of trust lien secures the payment of such so-called express or implied promise of payment; and the deed of trust lien should be removed from appellant's home.

The judgment of the trial court is reversed, and judgment is here rendered for appellant, canceling and removing the cloud caused by the deed of trust on lots 9 and 10, in block No. 1, Leming addition to the city of Bowie, Montague county, Tex.; and judgment is further rendered vesting the title to stock certificate No. 86372, for 30 shares of capital stock in appellee association, in said Farm & Home Savings & Loan Association, of Nevada, Mo., free from any claim or right upon the part of appellant, Dan L. Martin.

Reversed and rendered.

**LATTIMORE, Justice (concurring).**

I concur in the decision of Mr. Justice BROWN that the judgment of the trial court should be reversed and rendered for these reasons:

These contracts, both as to the loan and as to the purchase of stock, were written by the loan company, and, in case of any conflict in or doubtful construction of the terms thereof, should be construed in favor of the borrower, Martin. Martin sustained a relation of stockholder and also a relation of borrower. As a stock owner, a reading of the terms of his purchase of stock and rights thereunder, as set out in Mr. Justice BROWN'S opinion, disclosed that he had the right when he had paid his 97 payments for his stock to pay no more on such stock, and the stock ownership was matured in him and the right was granted to him to assign the stock to the appellee at its book value.

Martin also assumes another relation to the company as a borrower of $3,000, and as such a borrower the appellee agreed with him that when he had paid his 97 payments as a stock owner and his stock thereby matured, he should have the right to deliver said stock, it being at an equal par value to his loan, to the appellee in full satisfaction of his borrower relation to appellee, provided he had paid his interest; the language so stating being quoted verbatim in the opinion of Mr. Justice BROWN. It seems to me that a proper construction of this entire contract is that he had an election as a borrower which he did not have were he only a stock owner and not a borrower, that additional election, granted to him as a borrower, being that he could deliver his stock at par value in satisfaction of his loan; he not being in arrears on the loan. Martin has elected to accept that option, and tenders his stock, matured and at par value, to the appellee, and demands a release of the lien upon his homestead.

This view of the matter is strengthened by the fact that I cannot find in the written record of the transaction any statement of a due date of the $3,000 borrowed by Martin of appellee in the event he has paid all of his purchase money upon the stock purchase and has kept his interest and other due payments up through the 97 months provided for the maturing of the contract. In other words, this provision for accepting the stock at par value is the only specific method named in the contract for the payment of the $3,000 loan.